ROBERT F. BULLEN

v.

JOHN B. DAWSON.

*Filed at Ottawa January 18, 1892.*

| | |
|---|---|
| 139 | 633 |
| 170 | 121 |
| 170 | 128 |
| 139 | 633 |
| 178 | 282 |
| 139 | 633 |
| 83a | 266 |
| 139 | 633 |
| 197 | 4 84 |
| 139 | 633 |
| 200 | 3409 |

1. LETTER OF CREDIT—*extent of liability.* A party applied to another for a loan of money. The latter consented to make the loan if the former would get his father to sign a note with him for the amount. On the next day the person desiring to make the loan handed to the other a telegram in the words, "Use my name for two hundred dollars," signed by the father. The lender refused to make the loan on the faith of the telegram, but made out a note for $233 to be sent to the father for his signature, which was returned with the father's name signed thereto. Afterward the son applied for a further loan, and produced a judgment note purporting to be signed by himself and his father for $300. The signatures of the father were shown to be forgeries. It was urged that the telegram impliedly authorized the son to use his father's name for further loans, or at least gave evidence of such credit on the part of the son with his father as justified the party loaning the money in putting faith in the son's subsequent acts and representations: *Held,* that as the authority given by the father was specific and limited, everything beyond the sum of $200 was by implication excluded.

2. In such case, the telegram, instead of authorizing the use of the father's name for a larger or a further loan, the only inference the party loaning had a right to draw from it was directly the reverse. The authority being limited by its own terms, the limitation was as effectual as it would have been if negative words had been used expressly excluding everything not expressly mentioned.

3. HOMESTEAD—*sale under execution—when void.* A sale on an execution of the homestead of the judgment debtor without observing the requirements of the statute in that behalf, is void, so as to convey no title capable of being asserted in a court of law.

4. EXECUTION SALE—*setting aside for irregularity.* The sale of a homestead under execution without taking the proper steps prescribed by the Exemption law before selling, is an irregularity highly prejudicial to the rights of the judgment debtor, and calculated to sacrifice the property at less than its value, and tending to prevent competition in the bidding. This irregularity, and the failure of the officer to first make demand of payment, coupled with gross inadequacy of the price realized, are sufficient to authorize the setting aside of the sale and allowing redemption.

5. SAME—*inadequacy of price.* While mere inadequacy of price is not ordinarily sufficient for setting aside a sale under execution and allowing the debtor to redeem after the statutory period of redemption has expired, the rule is, that such inadequacy of price, if gross, will be sufficient, when taken in connection with other, and sometimes even slight, circumstances of irregularity in the mode of conducting the sale, to authorize such relief.

6. JUDGMENT BY CONFESSION—*upon forged note and warrant of attorney*—*coram non judice.* Where judgment is entered by confession upon forged notes and warrants of attorney, the proceeding will be *coram non judice* and the judgment void for want of jurisdiction of the person of the defendant, and all proceedings under the same will also be nugatory and void, and no title will pass under a sheriff's deed made thereunder.

APPEAL from the Circuit Court of Cook county; the Hon. M. F. TULEY, Judge, presiding.

Mr. JOHN LYLE KING, for the appellant.

Messrs. BARNUM & BARNUM, for the appellee.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by John B. Dawson against Robert F. Bullen, P. E. Stanley, Malcolm McNeill and others, to set aside certain judgments by confession, the execution sales thereunder, and the sheriff's deeds issued in pursuance of such sales, and to restrain the defendants, in the meantime, from conveying or incumbering the lands covered by said sheriff's deeds. The following facts appearing from the pleadings and proofs do not seem to be controverted:

On the 12th day of September, 1887, the day the bill was filed, the complainant was, and for more than twenty years prior thereto had been, the owner in fee of a tract of land containing about seven acres, situate on Milwaukee avenue, Chicago, and during all that time had been residing on said land and occupying the same, with his family, as his home-stead, said land being, at the date above mentioned, and having been, from a period anterior to the dates of the promissory

notes and warrants of attorney hereinafter described, encumbered by a mortgage for $3000. On the 15th day of May, 1883, a judgment was entered in the Superior Court of Cook county by confession, in favor of said Stanley and against the complainant and Douglas D. Dawson, his son, for $355 and costs. Said judgment was entered upon a promissory note for $300, dated January 29, 1883, due ninety days after date, and bearing interest at the rate of eight per cent per annum, and payable to the order of said Bullen, and a warrant of attorney authorizing a confession of judgment thereon, with $50 attorney's fees, said note and warrant of attorney purporting to be executed by the complainant and his said son. Execution was issued on said judgment and levied on a portion of said land, and on the 11th day of June, 1883, the land so levied on was sold by virtue of said execution to said McNeill for $382.17, and a certificate of sale was issued to him, and a duplicate thereof recorded in the office of the recorder of the county of Cook. On the 18th day of September, 1884, the sheriff issued to said purchaser a deed conveying to him the land so sold, and on the 16th day of January, 1886, said McNeill conveyed said land to said Stanley by warranty deed.

On the 2d day of July, 1883, Robert F. Bullen recovered a judgment in said court by confession against the complainant and his said son for $288.42, and costs. That judgment was entered on a promissory note for $233, dated December 16, 1882, payable to the order of said Bullen, sixty days after date, with eight per cent interest, and a warrant of attorney authorizing a confession of judgment for the amount of said note and $50 attorney's fees, said note and warrant of attorney also purporting to be executed by the complainant and his said son. An execution was issued on this judgment and levied on all of said land, and on the 13th day of October, 1884, all of said land was struck off and sold to said Stanley for $338.65. On the 11th day of January, 1886, a sheriff's deed, in pursuance of said sale, was issued to said Stanley,

and afterward, said Stanley conveyed all of said land to said Bullen by quit-claim deed, said deed being unrecorded at the time of the filing of the bill.

In case of neither of said execution sales were any steps taken to have the homestead set off, or to have the premises appraised to ascertain whether they were worth more than $1000, or to ascertain whether the premises could be divided, nor was any notice of the levy or sale given to the complainant, nor were any other steps taken, as provided by statute, to divest the complainant's homestead estate, or to subject the same to sale.

The complainant, by his bill, alleges that both of said promissory notes and warrants of attorney, so far as his signatures are concerned, are forgeries, and that he never had any knowledge or notice of the existence of such instruments, or of the entry of judgments thereon, or of the sales of his land on execution, or of the execution of said sheriff's deeds, until the 30th day of June, 1887; that on that day he called at the office of the county treasurer to pay the taxes on his said land, and was then informed that said taxes had been paid by said Stanley; that he thereupon made inquiries, and for the first time discovered the facts above stated.

The defendants, by their answers, allege that the complainant's signatures to said notes and warrants of attorney are his genuine personal signatures, and set up a variety of evidentiary facts tending to establish such allegation. They also allege that they were not aware that said premises or any portion of them were the complainant's homestead, and deny that they were so, but admit that, because of their ignorance of said claim of homestead, it was not set off by the sheriff, but deny that their failure to have said homestead set off, if there was a homestead, invalidates or nullifies said execution sales, and allege that, if the complainant has or is entitled to a homestead, they are ready and willing that the same may be ascertained and set off in accordance with the statute.

The cause being heard on pleadings and proofs, a decree was rendered finding that the signature of the complainant to the $300 note and warrant of attorney was forged, without the knowledge, consent, authority or approval of the complainant, and that, as against him, said judgment, and the execution, sale and certificate of sale thereunder, as well as the sheriff's deed, the warranty deed from McNeill to Stanley, and the quit-claim deed of the interest thus acquired from Stanley to Bullen, are null and void, and it was thereupon decreed that said judgment, and all the proceedings thereunder, including the sheriff's deed and the subsequent conveyances from McNeill to Stanley and from Stanley to Bullen, be cancelled, annulled and set aside, and that Bullen, Stanley and McNeill be perpetually enjoined from claiming or asserting any title, either at law or in equity, under either of said conveyances, or under said execution or sale, and said judgment was decreed not to be and not to have been a lien upon the complainant's said land, and it, and the promissory note upon which it was entered, were decreed to be as to the complainant, null and void, and to be cancelled.

With reference to the note and warrant of attorney upon which the other judgment by confession was rendered, the court found that, whether said note was in fact signed by the complainant or not, he was entitled to relief as against said judgment, and the execution, levy, sale and sheriff's deed thereunder, and against the conveyance from Stanley, the grantee in the sheriff's deed, to Bullen; but only on condition that, within thirty days from the entry of the decree, he pay into court, for the benefit of Bullen, the amount of said judgment, with costs and interest. The decree further found that the property sold under said judgment was the complainant's homestead, and was of a value far exceeding $1000, in excess of all incumbrances thereon, and that it was levied on and sold by the sheriff under the executions issued upon said judgments respectively, without compliance of any sort with the

requirements of the statute applicable to sales of homesteads on execution, and therefore that both of said sales, certificates of sale and sheriff's deeds were null and void and passed no title, either at law or in equity, to the respective purchasers at said sales, or to Bullen, their grantee. It was therefore adjudged and decreed that the complainant, within thirty days, pay the amount of said judgment entered on said note for $233 into court, and that upon such payment being made, the lien of said judgment, the levy and sale thereunder, the certificate of sale and the sheriff's deed, and also the conveyance from the purchaser to Bullen, be held and esteemed as cancelled, abrogated and annulled, and that the defendants and each of them be perpetually enjoined from asserting or claiming title to said land under said judgment and subsequent sale proceedings and the certificate and conveyances aforesaid. From this decree said Bullen has appealed to this court.

The complainant is a clergyman of the African Methodist Episcopal Church, and at the date of the notes in question, he was serving as pastor of a church of his denomination at Quincy, Illinois. While he was there, his family continued to reside upon the premises in question and to occupy the same as their homestead, the complainant visiting them at frequent intervals. It appears that, on or about December 12, 1882, Douglas D. Dawson, the complainant's son, applied to Bullen for a loan, and that Bullen consented to make him such loan if he would get his father to sign a note with him therefor. On the next day Douglas D. Dawson produced and handed to Bullen a telegram in the following words: "Use my name for two hundred dollars. J. B. Dawson." This telegram is admitted by the complainant to be genuine. The complainant claims and testifies that, after sending this telegram, he heard nothing more from his son or any one else in relation to said proposed loan. The testimony on the part of Bullen, however, tends to show, that he, Bullen, refused to make the loan on the faith of the telegram, but made out a judgment note for

$233, including therein a small loan which he had already made to Douglas, to be sent to the complainant for his signature; that this note was returned to Bullen by Douglas with what purported to be an autograph letter from his father, postmarked "Quincy," acknowledging that he had signed and therewith enclosed said note. On the production of this note and letter, Bullen loaned to Douglas the amount of the note, less the previous loan.

The testimony on the part of Bullen tends also to show that Douglas came to him again towards the last of January, 1883, for a further loan, and produced a judgment note for $300, purporting to be signed by himself and his father, and payable six months after date. Bullen being unwilling to make a loan for that time, filled up a judgment note for $300 due in ninety days, and gave it to Douglas to send to his father for his signature. A few days later, Douglas returned said note to Bullen with his own signature and what purported to be that of his father thereon. He at the same time handed to Bullen what purported to be an autograph letter from his father in which the writer, among other things, said: "Tell Mr. Bullen to let you have the money on my note at sixty or ninety days, as you say he will not for six months. I send you the note you returned to me." On these papers Bullen loaned Douglas the further sum of $300.

The complainant testifies that neither of said letters was written by him, and that his signatures to both of said notes are forgeries. A large amount of testimony was introduced by the respective parties, both of expert witnesses and others, bearing upon the question of the genuineness of the complainant's signatures to said notes, but as it would serve no useful purpose for us to go through the tedious process of analyzing said evidence so as to show where the preponderance lies, we shall content ourselves with saying, that we have examined it with care, and are unable to see any tenable ground for dissenting from the conclusion reached by the learned chancellor

who heard the case, with the advantage of having an opportunity of seeing the witnesses and of hearing them testify. We think the fair conclusion from all the evidence is, that the complainant did not sign said notes, and did not know that any such notes were executed.

It is urged by counsel that the telegram of December 13, 1882, authorizing Douglas to use the complainant's name for $200, impliedly authorized Douglas to use his father's name for further loans, or at least, gave evidence of such credit on the part of Douglas with his father as justified Bullen in putting faith in his subsequent acts and representations. We are unable to see any force in this contention. The authority given to Douglas by his father was specific and limited. It extended to the sum of $200, and by implication, every thing beyond that was excluded. It was not in the nature of a general or continuing letter of credit, and Bullen had no warrant for regarding it as such. Instead of authorizing the use of the complainant's name for a larger or a further loan, the only inference Bullen had a right to draw from it was directly the reverse. The authority being limited by its own terms, the limitation was just as effectual as it would have been if negative words had been used expressly excluding everything not expressly mentioned.

Some effort was made by the defendants to show a subsequent ratification of said notes by the complainant, but the evidence on that subject is uncertain and inconclusive, and therefore insufficient to justify a decree that such ratification had taken place.

It follows from what we have said that the case, in our opinion, was properly disposed of, so far as it relates to the title claimed by Bullen through the judgment on the $300 note, upon the finding of the decree that said note and the warrant of attorney accompanying it, were forgeries, and consequently that the judgment entered thereon was *coram non judice* and void for want of jurisdiction of the person of the complainant,

and that all proceedings under said judgment were in like manner nugatory and void. It only remains to be determined whether the decree, so far as it relates to the title claimed under the judgment on the $233 note and warrant of attorney should be sustained.

The court, as we have already seen, without deciding whether that note and warrant of attorney were forgeries or not, held that the levy, sale and sheriff's deed based upon the judgment entered on that note were void, on account of the failure of the sheriff to observe the provisions of the statute in relation to sales of homesteads on execution, but the complainant was required, as a condition to relief against that judgment, to pay the full amount of the judgment, including costs, interest and attorney's fees.

It has been frequently held, both under our present exemption law, and under the one previously in force, that a sale on execution of the homestead of the judgment debtor, without observing the requirements of the statute in that behalf, is void, so as to convey no title capable of being asserted in a court of law. *Hartwell* v. *McDonald,* 69 Ill: 293; *Conklin* v. *Foster,* 57 id. 104; *Stevens* v. *Hollingsworth,* 74 id. 202; *Barrett* v. *Wilson,* 102 id. 302; *Nichols* v. *Spremont,* 111 id. 631; *Hubbell* v. *Canady,* 58 id. 425; *Hartman* v. *Schultz,* 101 id. 437.

But it is claimed that while such sale is void at law, it passes a title to that part of the property sold which is in excess in value of $1000, which will be recognized and enforced in equity, either by setting off a homestead of the value of $1000, or, if the premises are not susceptible of division, by requiring the purchaser to pay that sum to the judgment debtor. In support of this view, the following cases may be cited: *Loomis* v. *Gerson,* 62 Ill. 11; *Leupold* v. *Krause,* 95 id. 440; *Stevens* v. *Hollingsworth, supra.*

Without entering into a discussion of the question here presented, but conceding, for the purposes of this decision, first, that the $233 note and warrant of attorney were genuine, and

41—139 ILL.

that the judgment entered thereon was valid, and, secondly, that by the sale and sheriff's deed, the purchaser obtained an equitable title to the excess over the homestead of $1000, we still think the decree is proper and must be sustained. The complainant stands here upon at least as advantageous a footing as he would in an ordinary case of sale on execution, and if the case presents grounds which would, even then, entitle him to have the sale set aside and to be allowed to redeem, he is entitled to do so here, independently of questions growing out of the failure to set off his homestead.

The price bid at the sale was only $338.65, while the evidence shows or at least strongly tends to show, that the value of the property, over and above the homestead and all incumbrances, was many times that sum. The price bid therefore was grossly inadequate. While mere inadequacy of price is not ordinarily sufficient to justify setting aside a sale under execution and permitting the judgment debtor to redeem, after the statutory period of redemption has expired, the rule is that such inadequacy of price, if gross, will be sufficient, when taken in connection with other, and sometimes even slight, circumstances of irregularity in the mode in which the sale was conducted.

It can scarcely be pretended that the failure of the sheriff to take the steps prescribed by the exemption law before selling the premises in question, was not an irregularity, or that it was not prejudicial to the complainant. Property can be sold for the highest price only when the sale is legal and regular. No competition in bidding is likely to arise when the sale attempted to be made is one which will be void in law, and only confer upon the purchaser an equitable right of a somewhat precarious and doubtful character. The sheriff should have exposed said property to sale in that manner which would be likely to produce the highest price, and that could only be done by following the requirements of the exemption law.

Furthermore, no demand seems to have been made upon the complainant for the payment of the judgment, and no notice was given him that the sale was contemplated. If such demand had been made or notice given, he would have had an opportunity, by paying off the judgment, to save his property from sacrifice. If steps had been taken to set off the homestead, it may be that the premises would have been found incapable of division, and then the complainant would have had an opportunity to prevent a sale altogether by paying the excess of the appraisement over the $1000. These irregularities were clearly prejudicial to the complainant, and when taken together with the inadequacy of the price bid, sufficient ground was established for setting the sale aside and permitting the complainant to redeem. That, in substance, is what the decree does.

The decree is in harmony with the suggestion of this court in *Leupold* v. *Krause, supra*. That was a bill in chancery, brought by the purchaser at an execution sale of a homestead, where no steps had been taken to set the homestead off, for the purpose of enforcing his equitable title, and of setting aside certain conveyances of the judgment debtor which he alleged to be fraudulent, and this court said: "If by reason of the irregularity of selling without having the homestead set off, the property was sold at a sacrifice, complainant should permit his sale to be set aside upon payment of his judgment, if the parties interested in the land are willing to pay the same."

The decree will be affirmed.

*Decree affirmed.*