Morrison H. Castle, Appellant, v. Lester H. Powell and Luella M. Powell, Appellees.

Gen. No. 34,366.

GRIDLEY, J., dissenting.

Opinion filed March 24, 1931.   Rehearing denied April 6, 1931.

STEDMAN, KESLER, LEWIS & FEINSTEIN, for appellant.

WEST & ECKHART, for appellees.

MR. JUSTICE KERNER delivered the opinion of the court.

In an action in assumpsit, commenced by the City State Bank of Chicago based upon a written agreement of guaranty signed by defendants, there was a trial without a jury on a stipulation of facts resulting in a finding and judgment against defendants for $1,697.30.   Morrison H. Castle became the assignee of the bank's claim and was substituted as plaintiff. He prosecutes this appeal and claims that the judgment should have been for $30,000.   Under the pleadings and the stipulated facts the question whether he is entitled to a judgment for the larger sum is wholly one of law.

The agreement of guaranty (bearing the signatures and seals of the parties and signed by the bank by its vice president, Guy L. Bush) states that it is made on September 25, 1926 (amended on December 18, 1926, and again on April 18, 1927); that it is "between the City State Bank of Chicago, a corporation, Frederick R. Warner and Lester H. Powell and Luella M. Powell, ·his wife";· that "whereas" Warner, doing business as Fred Warner Agency of Insurance, "is desirous of *a line of credit*" in the bank, the same "to be

guaranteed'' by the two Powells ,personally, and by certain shares of the common stock of the Wells Brothers Construction Company; and that; therefore, in consideration of one dollar ($1) and other good and valuable considerations and this agreement it is agreed:

1. The Bank "shall extend a line of credit" to Warner, not to exceed $30,000, *"upon notes given for insurance premiums."*

2. The Bank "shall discount the said insurance premium notes at 5 per cent of the full face amount of said notes."

3. The Bank "shall deduct 5 per cent of the full face amount of said notes and hold same to the credit of said Lester H. Powell, provided, however, that it reserves the right to apply any part or portion of said sum so set aside for said Powell upon the payment of any past due notes, which may be discounted under the terms of this agreement for said Frederick R. Warner."

4. The two Powells "hereby agree, and simultaneously with this agreement deposit 1211½ shares of the common stock of the Wells Brothers Construction Company . . . as collateral, *to guarantee the payment of said loans* made by and credit herein provided to be made to or extended to said Frederick R. Warner," and that, upon the "refusal or failure of said Frederick R. Warner" to pay to said Bank "the *said notes* so discounted, *credit extended or loans* made by him upon maturity thereof," the Bank is authorized, upon giving 15 days' notice by registered letter addressed to the two Powells, to sell part or all of said stock and "to apply the proceeds thereof to the payment *of any debts or indebtedness,* including costs and charges due the City State Bank from the said Frederick R. Warner."

5. The two Powells "hereby bind themselves jointly and severally *to pay* to the City State Bank

*the entire amount or any residue thereof* which may from time to time become due and payable by said Frederick R. Warner to said City State Bank, including court costs and attorneys' fees, and all other charges incurred for the enforcement of this agreement.''

The declaration consists of three counts, in each of which the agreement of guaranty is set out in full. In the first count it is alleged in substance that in September, 1926, Frederick R. Warner, doing business as the ''Fred Warner Agency of Insurance,'' applied to the bank ''for certain loans, credits, discounts and accommodations''; that thereafter the agreement of guaranty was executed; that the bank, confiding in and expressly relying upon the promises of the two Powells as set forth in the agreement, ''afterwards on September 25, 1926, and on divers other days thereafter to and including October 22, 1927, loaned and advanced to said Frederick R. Warner, doing business, etc., the sum of $30,000,—all of said loans and advances being made to him upon insurance premium notes, payable to the Fred Warner Agency of Insurance and by him, so doing business, etc., duly endorsed and delivered to the bank''; that he has failed and refused to repay said loans and advances and that there is now due from him to the bank the sum of $30,000, together with interest charges, costs and attorneys' fees; and that by reason of his failure and refusal to pay to the bank said sum the two Powells are liable therefor.

In the second count the allegations are substantially the same, and there are additional allegations that on September 26, *1927,* the bank had advanced and loaned to Warner upon insurance premium notes presented by him a sum in excess of $30,000, to wit, $40,000; and that on that day Lester H. Powell signed and delivered to the bank a letter or instrument in writing, ad-

dressed to its vice president, Bush, and dated September 26, 1927, as follows:

"I owe you an apology for not having written sooner confirming our agreement *in connection with the Fred Warner account* but it had slipped my mind.

"It is agreeable to me that you *extend the credit on the F. R. Warner account,* which account is covered by certain of my collateral in your possession, *up to the amount of $40,000.* In the event anything should occur to give you any misgivings as to the condition of the account, etc., I wish you would be kind enough to advise me promptly so that I may take whatever steps may be necessary to protect my interests in the matter. . . ."

In the third count the allegations are substantially the same as in the second count, except that it is alleged that the bank, confiding in and expressly relying upon the promises of the two Powells as set forth in said agreements, on September 25, 1926, and on divers other days thereafter to and including October 22, 1927, loaned and advanced to said Frederick R. Warner, doing business, etc., divers sums of money aggregating $40,000, "upon purported notes for insurance premiums," presented by Warner and duly endorsed by him,—"some of which notes . . . being forgeries, and some being fictitious notes, the same bearing the purported signatures of persons who did not exist, said signatures of the alleged makers being affixed to said notes by said Warner, or by other persons unknown to the bank"; that Warner, intending to defraud the bank, and without its knowledge that said notes were not genuine and valid, "endorsed and delivered the same to the bank"; that, by reason of such endorsement and delivery, Warner "vouched and warranted to the bank that said notes were genuine"; that the bank, relying upon Warner's endorsements

upon such forged and fictitious notes and believing that they were genuine notes, "advanced and loaned to said Warner the sum of $40,000 upon said notes, so presented by him," and that immediately upon the discovery by it (the bank) that some of said notes so presented were forgeries and fictitious notes, it (the bank) "notified defendants and demanded of them that they make good their guaranty and repay to it the amount of said advances and loans made by it to said Warner."

To the declaration defendants filed a plea of the general issue. In the affidavit of defense, made by Lester H. Powell and accompanying the plea, he states that "by said declaration it appears that the liability of defendants, if any, is limited to the notes of said Warner, secured by notes *given for insurance premiums,* and that various of said notes, deposited as collateral security to the obligations of said Warner, were not for insurance premiums, but were forgeries and purported notes deposited by said Warner, for which said defendants are not liable; that from the declaration it is not possible to determine whether or not any of said notes were in fact given for insurance premiums; and that, therefore, affiant says that said defendants have a good defense to the whole of plaintiff's demand."

The stipulation of facts, on which the case was submitted to the court, is in substance as follows:

1. That said City State Bank was and is an Illinois corporation and authorized to do a general banking business.

2. That on or about September 25, 1926, Warner, doing business as the Fred Warner Agency of Insurance, applied to the bank "for certain loans, credit, discounts and accommodation"; that then and from time to time thereafter he presented to the bank what were termed "insurance premium notes of the Fred

Warner Agency of Insurance," and which varied in amount, date and name. (A copy of the form of a judgment note, payable to said Agency, is here set out, headed "Insurance Premium Note of Fred Warner Agency of Insurance.") That each of such notes so presented was signed, apparently, by one of Warner's customers and was endorsed in Warner's genuine handwriting by the name of said agency and also by "Fred Warner." (A long list of such notes is here set forth, giving the name and address of each purported maker, the face amount of each note, what had been paid thereon and the balance due. The aggregate of the sums apparently due is $38,452.22.)

3. That on September 25, 1926, the bank, Warner and the two Powells signed and delivered said agreement of guaranty. (The agreement, as above set forth in the declaration, is here set forth in full.)

4. That the two Powells "did conform to that portion of the agreement of guaranty and did deposit 1211½ shares of the common stock of the Wells Brothers Construction Co., a corporation, said stock being represented by certificates Nos. 87 and 88, *as collateral to said guaranty.*"

5. That thereafter, on March 7, 1927, Warner applied to the bank for an "additional *line of credit,*" increasing the same to $40,000, "which was refused by said bank up to the time said Lester H. Powell, on March, 1927, directed said bank, by telegram (and later by oral agreement), to extend an additional *temporary* credit of $1,500 to said Warner, and that he (Powell) would arrive on March 15th, and take the matter up with said bank."

6. That thereafter Warner asked for an additional line of credit to the amount of $40,000, and "Lester H. Powell did at said time agree to guarantee, and did then guarantee, an additional line of credit to the amount of $40,000 to said Warner; and that said oral

agreement was confirmed by a communication under date of September 26, 1927, as follows:'' (Said letter of Lester H. Powell, as above set forth in the second and third counts of the declaration, is here set forth in full.)

7. That subsequent to the execution of said original agreement of guaranty, and relying upon it, the bank ''advanced to and paid over to said Warner $30,000, in excess of any sum received by it in installments paid upon said notes or from moneys received from said Warner or from any other parties in payment upon the account of said Fred Warner Agency of Insurance.'' . . .

9. That said Warner, doing business as the Fred Warner Agency of Insurance, was a general insurance agent for the Reliance Life Insurance Co. of Pittsburgh, Pa., represented no other insurance company, and wrote no policies of life insurance except those issued by said Reliance Co.; that no applications for life insurance were received by said Reliance Co. from the persons ''whose names are appended to the notes hereinbefore listed, and no policies of insurance were issued to said persons, except as hereinafter stated''; that the foregoing facts were unknown to the bank, or the present plaintiff, ''until subsequent to the discount by the bank of said notes hereinbefore listed''; and that said notes, ''for which applications for life insurance were made and for which life insurance policies were issued,'' are as follows: (Here is set forth a list of twenty-seven [27] genuine premium notes, giving the name and address of each maker, the face amount of each note, what has been paid thereon and the balance due. The aggregate of the sums due is $1,697.30.)

''If the court finds that defendants are only liable for the notes admitted by Paragraph 9 hereof to be insurance premium notes, then judgment for $1,697.30,

the amount due on said notes, shall be entered herein against defendants. Upon the payment of any judgment entered herein, the certificates of stock . . . for 1211½ shares of Wells Brothers Construction Co. shall be surrendered to defendants, otherwise said stock shall be disposed of by plaintiff as by law required."

10. "That for the purpose of this action the truth of the facts contained in this stipulation is admitted by all of the parties hereto; that the facts herein contained shall be considered in evidence so far as they are material, but none of the parties admit the materiality, relevancy or competency thereof; that all material, competent and relevant facts herein shall be of the same force and effect and as binding upon the parties hereto as if said facts were duly proven by competent evidence in the regular manner at the trial of this cause before the court."

We agree with plaintiff that the determination of this case depends upon the construction to be given the contract of guaranty. It is his contention that the defendants guaranteed to pay the residue of the account of Frederick R. Warner. The defendants contend that the notes were not insurance premium notes except in the sum of $1,697.30 and that they are not liable under the terms of the contract of guaranty beyond that amount. The contract of guaranty must be considered and interpreted as a whole and from it, as a whole, must be gathered the intention of the parties. It must be construed by and from its own terms and provisions, as far as they furnish a guide; the contract should be construed so as to make it effective and enforceable where it can be done without violence to the intent of the parties to be gathered within the language of the four corners of the writing. (*Mamerow v. National Lead Co.*, 206 Ill. 626; *Corn Exchange Nat. Bank of Chicago v. Curtiss*, 146 Ill. App. 489.)

Courts will seek to discover and give effect to the intention of the parties, and contracts of guaranty will be construed in the same way as other contracts (*Whalen v. Stephens*, 193 Ill. 121), and as favorably to the creditor as any other written contract. (*Swisher v. Deering*, 204 Ill. 203; *Taussig v. Reid*, 145 Ill. 488.) But it is not the province of courts to interpolate new terms into contracts against the evident intentions of the parties. (*Robinson v. Stow*, 39 Ill. 568, 572.) The contentions of the parties to the contract are not the criterion which should guide the court in determining whether the written contract is a full expression of the agreement of the parties. The court must determine this from the writing itself. (*Armstrong Paint & Varnish Works v. Continental Can Co.*, 301 Ill. 102, 106; *Peoria Savings, Loan & Trust Co. v. Elder*, 165 Ill. 55.)

It is contended by the plaintiff that *Holm v. Jamieson*, 173 Ill. 295, is decisive of the instant case. We have examined that case and cannot agree with his contention. In the *Holm* case, *supra*, the guaranty was indorsed upon the note in the suit. It was a guaranty of that specific note and, therefore, a promise to pay it at all events. Such are not the facts in this case. In the instant case the contract of guaranty was not indorsed upon the notes listed in the stipulation, but was separate and distinct therefrom. The court in the *Holm* case, *supra*, page 300, said:

''By a guaranty of this character the guarantor undertakes to every subsequent holder that the names of the maker and previous endorsers are really in the handwriting of those to whom they respectively purport to belong; and this is carried to the extent that where a promise has been written upon the note itself, a person guaranteeing the payment of that note is bound, even though the names of the prior parties, or some of them, were in fact forged, . . . the guaranty

was, in effect, the representation that the instrument or claim was perfectly valid, as well as a promise to pay it." Had the defendants guaranteed the notes listed in the stipulation the *Holm* case would apply, but they did not. They never represented at any time that the notes listed in the stipulation were valid notes given for insurance premiums. The City State Bank was not induced to accept the notes in question because of defendants' guaranty and it is not claimed that the defendants misled the bank.

Plaintiff also relies upon the case of *Pennsylvania Trust Co. v. McElroy,* 112 Fed. 509, which was a claim upon Henry Butterfield's guaranty of a judgment note for $75,000 of Lyons, Butterfield & Company, a limited partnership, given by the partnership to the bank. The judgment note was given and accepted as collateral security for a line of commercial paper which the partnership might receive from its customers for merchandise sold and delivered, and which the bank might purchase from the partnership as indorser. The bank did purchase from the partnership, as indorser, commercial paper. It was discovered that this paper was nearly all worthless, because the apparent makers were fictitious persons or their names were forged. The defense was that the guaranty covered only notes that the partnership received from its customers for merchandise sold and delivered, and did not cover the forged and fictitious notes. The court said, page 511:

"The limited partnership, by its indorsement having avouched that these notes were genuine business paper, and thus induced the bank to purchase them, certainly could not successfully set up as against its liability upon the collateral judgment note that the notes here in question were not received from customers for merchandise sold and delivered, but were fictitious or forged. As then the limited partnership could not make such defense, neither *under the peculiar*

*circumstances of the case* is it available to the guarantor Henry Butterfield. He was a member of the limited partnership, and its secretary and treasurer. Although not individually liable for its debts, he was personally interested in its financial success. Undoubtedly the purpose of his guaranty was that the limited partnership might realize upon and receive the proceeds of commercial paper indorsed by the limited partnership and purchased from it by the bank. Now, the limited partnership did receive from the bank the proceeds from the purchase of these notes. To hold the guarantor then liable therefor violates no express provision of the judgment note or the indorsed guaranty, and does not go beyond the substantial purpose and true intent of the guaranty.'' (Italics ours.)

It will be noted that the court in this case justified its ruling, because of the ''peculiar circumstances of the case.'' Henry Butterfield was a member of the partnership and he was interested in its financial success and its secretary and treasurer. While the guaranty was indorsed only on the collateral note, nevertheless the partnership by its indorsement on the customers' notes vouched that they were genuine and thus induced the bank to buy.

As we read the contract in the instant case, it is entirely clear and does not leave room for any doubt as to the meaning and intentions of the parties. It is unambiguous in its terms and must, therefore, be interpreted and construed according to the language used, and the parties must be presumed to have meant that which their language clearly imports. (*Peoria Savings, etc. Co. v. Elder, supra.*) A guarantor may impose any terms or conditions in his guaranty which he may choose and will only be liable to the holder according to the terms of the agreement. (*Ryan v. Trustees of Town of Shawneetown,* 14 Ill. 20, 24; *Finney v. Condon,* 86 Ill. 78, 81; *Illinois Surety Co. v.*

*Munro,* 289 Ill. 570, 574.) The nature and extent of the liability of a guarantor depends upon the terms of his contract, and he will be held liable for all that is done by his principal that was contemplated by his contract, but he will not be held liable beyond the strict terms of his contract. Brandt in his work on Suretyship and Guaranty (3d. Ed.) Vol. 1, sec. 106, said:

"A rule never to be lost sight of in determining the liability of a surety or guarantor is, that he . . . has a right to stand upon the strict terms of his obligation, when such terms are ascertained. . . . It will not be implied that the surety has undertaken to do more or other than that which is expressed in such obligation. . . . Nothing can be clearer, both upon principle and authority, than the doctrine that the liability of a surety is not to be extended by implication beyond the terms of his contract. To the extent and in the manner and under the circumstances pointed out in his obligation, he is bound and no further."

The measure of the liability of a guarantor is fixed by his contract and his undertaking cannot be enlarged or *varied* by judicial construction. (*Mix v. Singleton,* 86 Ill. 194.) His undertaking is to be strictly construed, and his liability will not be extended beyond the precise words of his agreement, either by implication or by construction; to do so would be to enlarge his undertaking. (*Burlington Ins. Co. v. Johnson,* 120 Ill. 622; *People v. Toomey,* 122 Ill. 308; *Abbott v. Brown,* 131 Ill. 108; *Bullen v. Dawson,* 139 Ill. 633; *Tolman Co. v. Rice,* 164 Ill. 255; *Scovill Mfg. Co. v. Cassidy,* 275 Ill. 462; *Phoenix Mfg. Co. v. Bogardus,* 231 Ill. 528; *Schiff v. Continental Nat. Bank & Trust Co.,* 255 Ill. App. 333, and *Michaelson v. Doonan,* 259 Ill. App. 337.)

In the case of *Lininger & Metcalf Co. v. Webb,* 51 Neb. 10, the plaintiff sued to recover money alleged to be due by virtue of a written contract between plaintiff and one Webb whereby Webb became the agent of plaintiff and as such agent he received certain merchandise, which he was to sell and receive either cash or notes of the purchasers, which would be delivered to plaintiff. Cowden guaranteed the faithful performance of the contract. Webb delivered certain notes to plaintiff which were not paid by the makers, and plaintiff sued Cowden for the amount of these notes. The court said:

"Some of the notes for the payment of which it was sought to charge the defendants . . . were not taken on sales made by the agent for plaintiff, but were notes which he had received in other business transactions. . . . With their payment the surety or guarantor could not be charged. His obligation could not be extended beyond the terms of the agreement by which it was created, and this did not include notes taken in the course of defendant's business as agent other than in sales made for the plaintiff company, and which might for any purpose have been transferred to it by the defendant principal in the contract in suit."

In the case of *Locke v. McVean,* 33 Mich. 474, the plaintiff entered into a written contract to sell to David McVean sewing machines for which David McVean was to pay by the execution of notes, said notes to be on four months' time. David McVean gave notes payable six months after date. The court said:

"I discover no ambiguity and find nothing uncertain. . . . For every machine David was to give at the time of purchase his note on four months' time without interest, and in case he desired was to have an extension for sixty days, but for the time of the extension there was to be interest at the rate of eight

per cent. . . . No other or different notes were provided to be given by David to the plaintiff, and under the contract the plaintiff could not require any other.

. . .

". . . the guarantors only undertook for paper of a specific description, . . . and the plaintiff and David had no power to extend the obligation to other securities."

In *Byrne v. Aetna Insurance Co.*, 56 Ill. 321, the court said: "The liability of the surety ought not to be enlarged on account of the *laches* of the agent." (p. 326.) In the instant case plaintiff is endeavoring to hold defendants for the dishonesty of Warner. If a guarantor cannot be held for *laches*, he certainly ought not to be for his dishonesty unless he so agrees. We think it clear the purpose of the defendants was to enable Warner to obtain a line of credit not to exceed $30,000 *upon notes given for insurance premiums,* and to confine their obligations to the City State Bank of Chicago, to money that was loaned upon notes given for insurance premiums. This undertaking of the defendants speaks for itself. They cannot be required to assume more than they promised. To hold the defendants liable under the facts in this case would violate the express provisions of the guaranty and would go beyond the purpose and the true intent of the guaranty.

The judgment of the circuit court is affirmed.

*Affirmed.*

SCANLAN, P. J., concurs.

GRIDLEY, J., dissenting: I am of the opinion, under the pleadings, the agreement of guaranty and the stipulated facts, that defendants should be held liable to plaintiff in the sum of $30,000, instead of only $1,697.30.