Claude Southern Corporation, Plaintiff-Appellee and Cross-Appellant, v. Henry's Drive-In, Inc., Defendant-Appellant and Cross-Appellee.

Gen. No. 49,230.

First District, Second Division.

August 14, 1964.

Rehearing denied September 23, 1964.

290

Charles C. Kirshbaum and Harry G. Fins, both of Chicago, for appellant.

Jay Erens, of Chicago, for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an appeal from a judgment of the Superior Court of Cook County entered on April 17, 1963, in favor of the plaintiff, Claude Southern Corporation, for $49,117, against defendant, Henry's Drive-In, Inc. The plaintiff has cross-appealed asking five (5) percent interest on the amounts due from the defendant. The action was brought by plaintiff to enforce a written guaranty after three of the defendant's Florida franchisees were unable to continue payment for plain-

tiff's signs. These three franchisees were Florida Drive-In Corp., No. 1; Stanley Glavin; and Vidal #1 Corporation.

Defendant charges several errors: (1) that the exhibits attached to the third amended complaint show on their face that the agreements entered into by the plaintiff are contrary to the written guaranties of the defendant; (2) the defendant was released on one guaranty because of the payment by a third party; (3) the plaintiff could not maintain the action because it had assigned "all right, title and interest" in the rental agreement; (4) the amount of the judgment is not supported by the record.

Claude Southern Corporation is in the business of manufacturing, erecting and maintaining electric advertising signs in the State of Florida. Henry's Drive-In, Inc. is a corporation located in Illinois whose business is franchising "Henry's Drive-In" restaurants. During 1957 defendant took steps to franchise dealers in Florida. It sold to Mr. Kotlisky and Mr. Daneman, Henry's Drive-In of Florida, Inc., the right to seek locations and franchise individual operations throughout the State of Florida.

The White Way Electric Sign & Maintenance Co. of Chicago was retained to draw up plans for standardized electric signs for all Henry's Drive-Ins. White Way recommended that the plaintiff manufacture and maintain the signs on Henry's Drive-Ins in Florida.

The plaintiff agreed to manufacture and maintain signs in Florida on condition that the parent company, the defendant, Henry's Drive-In, Inc., Chicago, would guaranty payment. The then president of defendant, Mr. Anderson, negotiated with plaintiff regarding the guaranties. The negotiations culminated with Henry's signing letters of guaranty covering each installation of signs manufactured by plaintiff. The letters were drafted by an official of plaintiff and

294

then forwarded to defendant for signature. Each agreement provided in part:

> "Selling price for each location is $315.00 per month, for a period of sixty (60) months.
>
> In the event any one outlet should fail to make the monthly payments due to:
>
> a) closing of the premises, or
> b) failure to meet the monthly obligations
>
> Henry's Drive-In, Inc. agrees to continue these payments.
>
> Should it be necessary to remove Signs, and re-erect them on another location, Henry's Drive-In, Inc., in Chicago agrees to assume the cost of this work. At no time will Claude Southern Corp. take a loss on the Signs, or will monthly payments be interrupted."

Following receipt of the guaranties, plaintiff would enter into a separate agreement with each Florida franchisee providing for installation and payment for the signs. Each of these agreements was characterized as a "standard electrical advertising rental agreement" and provided that the "term of this lease shall be for a period of 60 months, commencing upon the first day immediately following the installation of the sign and ending at midnight of the day 60 months thereafter." In the case of Florida Drive-In Corp., No. 1, the agreement provided:

> "the rental to be paid by the lessee shall be $304.00 per month for each and every calendar month during the term of this lease. . . . Upon the termination of this lease . . . , the lessee shall have the option to renew this Lease Agreement for an additional term of 60 months, at the rental of $121.60 per month. In the alternative, the les-

see shall have the option to purchase said sign at a purchase price to be mutually agreed upon between the parties, and which purchase price, in the event of inability of the parties to mutually agree thereto, shall be the market value of said sign as determined by a Board of Arbitration."

The Vidal #1 Corp. agreement was similar to the Flordia Drive-In Corp. agreement except that the monthly payment was to be $330 per month and the additional term rental was to be $125 per month. Stanley Glavin's agreement provided for a monthly payment of $315 per month, a renewal rental payment of $125 per month, and "in the alternative, the lessee shall have the option to purchase the said sign at a consideration of one ($1) Dollar only."

The three guaranties and the three rental agreements were affixed to the third amended complaint as exhibits. In addition, paragraph 6 of the complaint alleged that the price of $1 was agreed upon as the price at which the respective operator would have an option to purchase the sign at the end of 60 months. A copy of a letter containing the option to purchase was plaintiff's exhibit 12. It was not attached to the complaint.

The third amended complaint was filed after the termination of this case for the purpose of conforming the pleadings to the proof. Defendant argues that an amendment which is complete in itself and does not refer to or adopt the prior pleading supersedes it and the original pleading ceases to be a part of the record, being in effect abandoned, or withdrawn with the result that the subsequent proceedings in the case are to be regarded as based upon the amended pleading, which will not be aided by anything in the prior pleadings. Bowman v. County of Lake, 29 Ill2d 268, 272, 193 NE2d 833 (1963); Wright v. Risser, 290 Ill App 576, 581, 8 NE2d 966 (1937). This is a correct

statement but plaintiff's exhibit 12 was sufficiently referred to in paragraph 6 of the third amended complaint. The letter containing the option to purchase is a part of the record and of the pleadings.

■ Section 36 of the Civil Practice Act (Ill Rev Stats c 110, § 36) does not require that a copy of the option to purchase letter be affixed as an exhibit to the complaint because the cause of action is founded upon the written guaranty not upon the option to purchase letter. 2 Nichols Illinois Civil Practice §§ 793, 794 (1961). The option to purchase letter is merely evidentiary and comes under the permissive part of the section.

■ ■ Defendant next argues that where there is a discrepancy or contradiction between an allegation in a complaint and facts as shown in an exhibit attached to and made a part of the complaint, the exhibit controls. Awotin v. Abrams, 309 Ill App 421, 425–426, 33 NE2d 179 (1941); Woods v. First Nat. Bank of Chicago, 314 Ill App 340, 344, 41 NE2d 235 (1942); Bertlee Co., Inc. v. Illinois Pub. & Printing Co., 320 Ill App 490, 496–507, 52 NE2d 47 (1943). This again is true but the option to purchase letter referred to in paragraph 6 of the third amended complaint is not inconsistent with or contrary to the exhibit entitled "standard electrical advertising rental agreement" attached to the complaint. Our courts have noted that a lease agreement is often used in conjunction with an option to purchase and that the two are not inconsistent. In Keck v. Lambacher, 225 Ill App 213, 215 (1922) the court stated:

" 'Sellers desirous of making conditional sales of their goods, but who do not wish openly to make a bargain in that form, for one reason or another, have frequently resorted to the device of making contracts in the form of leases either with options to the buyer to purchase for a small con-

sideration at the end of the term, provided the so-called rent has been duly paid, or with stipulations that if the rent throughout the term is paid, title shall thereupon vest in the lessee. It is obvious that such transactions are leases only in name. The so-called rent must necessarily be regarded as payment of the price in installments since the due payment of the agreed amount results, by the terms of the bargain, in the transfer of title to the lessee.' (Williston on Sales, sec 336.)"

Moreover paragraph 8 of the rental agreement itself provides that an option to purchase agreement was to be mutually agreed upon by the parties. There is no inconsistency between the rental agreement exhibit and the option to purchase letter referred to in paragraph 6.

 Defendant's next point is that where the exhibits are controlling, the language of the exhibits will be taken as the factual basis upon which the complaint is predicated. Fowley v. Braden, 4 Ill2d 355, 358–360, 122 NE2d 559 (1954); Divco-Wayne Sales Financial Corp. v. Martin Vehicle Sales, Inc., 45 Ill App2d 192, 195, 195 NE2d 287 (1963). If there is an inconsistency between allegations and exhibits in this complaint it is between the exhibits themselves. Granting that the factual basis of the complaint must be taken from the exhibits we must examine those exhibits and determine if they are inconsistent. In Bertlee Co., Inc. v. Illinois Publishing & Printing Co. (supra at 507–508), the court considered a situation where the parties were unable to agree on the construction to be given to the language employed in the exhibits because the terms were susceptible to more than one interpretation, the court stated quoting MacAndrews & Forbes Co. v. Mechanical Mfg. Co., 367 Ill 288, 297–398, 11 NE2d 382 (1937):

" 'The intention of the parties is to be determined from the language employed, when read in the light of the context of the instrument and such surrounding circumstances as will aid the court in arriving at the true meaning of the parties. (Geithman v. Eichler, 265 Ill 579; Goodwillie Co. v. Commonwealth Electric Co., 241 id. 421; Druecker v. McLaughlin, 235 id. 367.) In case of ambiguity we may look to the interpretation which the parties themselves have placed upon the agreement for assistance in determining its true meaning. (Storey v. Storey, 125 Ill 608; Vermont Street M. E. Church v. Brose, 104 id. 206.) It is also the rule that, where a contract refers to another instrument or to a certain part thereof by specific designation, it is proper that the court know what such provision of the other instrument is. Defendant's letter of September 19 refers directly, and purports to be an answer to, a numbered item in the plaintiff's letter of September 8. Whether it was intended by the defendant that such answer should be construed as a warranty of 24-hour performance by this machine, is to be determined by a construction of these instruments and the conduct of the parties.' "

The intention of the parties may be determined beyond the four corners of the exhibits themselves, and we are convinced, as shall be demonstrated, that there is no inconsistency.

■■■■ Defendant charges that plaintiff has admitted that the exhibits are inconsistent by not answering the argument. A cursory reading of plaintiff's brief, however, demonstrates that it has chosen to answer the argument by reducing the principle to the parlance of guaranty law. It is elementary that a guarantor is not liable for any thing which he did not agree to and if the creditor and principal have entered

■■■■■■■■■

into an agreement materially different from that contemplated by the instrument of guaranty, the guarantor shall be released. Plaintiff has chosen to show that the contract entered into between the principal and creditor—standard electrical advertising rental agreement—was exactly what was contemplated by the contract of guaranty. The contract of guaranty must be considered and interpreted as a whole and should be construed so as to make it effective and enforceable where it can be done without violence to the intent of the parties. Castle v. Powell, 261 Ill App 132, 140–141 (1931). The promisor is properly favored to the extent that he is permitted to stand upon the exact letter of his bond, in the sense that no condition or obligations may be imposed by implication, and that no construction should be made which will hold him liable beyond the express terms of his engagement. But where as here the express terms of the contracts are ambiguous, or there is a question regarding the intention of the parties, the rule of strict construction is not brought into play until the intention is determined from the declarations and conduct of the parties or from the surrounding circumstances. Taussig v. Reid, 145 Ill 488, 497, 32 NE 918 (1893); Stearns, Law of Suretyship, § 4.2 (5th ed, 1951). Letters of guaranty generally drawn by businessmen without the aid of legal counsel often lack the evidence of deliberation which characterize some of the forms of suretyship. Such commercial instruments should not be construed with a strict technical nicety but rather according to what is fairly to be presumed to have been the understanding of the parties. Scovill Mfg. Co. v. Cassidy, 275 Ill 462, 144 NE 181 (1916); Stearns (supra § 4.2).

The following discrepancies or inconsistencies appear between the two exhibits or between the guaranty and the rental agreement: (1) The guaranty contemplates a sale. The agreement between plaintiff and

each franchisee was a lease. (2) Defendant contemplated $315 per month. The agreement with Vidal #1 Corporation was for $330 per month. (3) The guaranty provided that plans and specifications of the signs were to be approved by the defendant. Vidal #1 Corporation's agreement with plaintiff showed that changes were made in the signs authorized by Henry's Drive-In of Florida, Inc. A similar objection was charged in regard to the agreement with Stanley Glavin.

An examination of the guaranties discloses that they contemplated installment payments over a 60-month period with title passing at the end of this period. The rental agreements with the option to purchase agreement gave each franchisee precisely that. The facts and circumstances surrounding the transaction disclosed that Henry's used the lease arrangement in other parts of the country and the purpose of the device was to allow the franchisee to ultimately own the signs while at the same time deriving tax benefits by writing off the rental costs. If the option to purchase letter were contained in the lease contract, the tax deductibility of the transaction would be lost, because the Internal Revenue Service would treat the transaction as a conditional sale with no right to deduct the purchase payments. Rev Rul 55–540, 1955–Cum Bull 39.

Finally in Keck v. Lambracher (supra), an Illinois court held that a lease coupled with an option to purchase for one dollar at the end of the lease term is a conditional sale.

■ If we were to determine that there was an inconsistency in the exhibits because of the use of the word sale on the one hand and the word lease on the other, it would not be a material variation. The rule discharging the surety should not be followed where the essentials of the original contract have not

301

been changed and the performance required of the principal is not materially different from that first contemplated. Stearns (supra § 6.7). In Wilkinson v. McKimmie, 229 US 590, 592–593 (1912) where an agreement provided for a conveyance of land and a conveyance back of a part of the land, and later the parties agreed, without the consent of the surety, that there should be but one conveyance reserving the part that was conveyed back, it was held that this did not discharge the surety. "A court of equity looks to substance rather than to form." We believe that the variation in the use of terms was not material since the parties received exactly what had been bargained for.

 Defendant argues that the contract of guaranty provided for $315 per month and not for any other figure. The agreement with Stanley Glavin was for $315 per month. The agreement with Vidal #1 Corporation was for $330 per month. This figure was arrived at because the unique location of Vidal required an extra sign and the extra cost was prorated over the 60-month period and added to the agreed figure of $315. Defendant in no event is liable for the excess over $315 per month. It is true that a material change in the contract of guaranty releases the guarantor. It is obvious, however, that the placement of the extra sign was an independent undertaking between plaintiff and the franchise. Stearns (supra § 6.15). Defendant is not liable for the added cost of this independent obligation nor is it released because it was entered into.

 The agreement with Florida Drive-In Corp., No. 1, provided for a payment of $304 per month. The circumstances surrounding this figure disclose that the cost of the sign was lowered because the specifications were changed with defendant's approval. Mr. Anderson, defendant's former president, testified

302

to this on the stand. There was no requirement in the guaranty that assent to changes be written rather than verbal. Where the guarantor assents to a change in his contract he is not released. United States v. McMullen, 222 US 460 (1911); Stearns (supra § 6.13). Moreover a change in a guarantor's obligation which can only be beneficial to him does not discharge him. City of Chicago v. Agnew, 264 Ill 288, 300, 106 NE 252 (1914); Restatement, Security § 128(a) (1941).

There is no substance to defendant's argument that it has been released because the guaranty stated that specification changes were to be approved by defendant, and the agreement with Stanley Glavin and Vidal #1 Corporation recites that changes were authorized by Henry's Drive-In of Florida. There are no changes set forth and substantiated in the record which were not approved by the defendant and in accord with specifications. This was determined as a question of fact before the lower court and is not open to review here.

After examining the circumstances and determining the intention of the parties it is apparent that there is no inconsistency between the exhibits in this complaint, or the agreement between the creditor and the principal contained nothing not contemplated in the contract of guaranty. Defendant's argument that the complaint does not state a cause of action is devoid of merit because of the above determination.

█ █ Defendant argues that it was released on its guaranty involving Vidal #1 Corporation because after default plaintiff accepted $700 from Cliff Pappas, the new operator, and continued to service the signs. Generally where a new party is substituted in the contract in place of the debtor without consent of the guarantor, the guarantor is released. Stearns (supra § 6.5). The rule does not apply here because the facts demonstrate that this money was not received until

1960 long after the defaults and even after this law suit began. The $700 has been applied against defendant's obligation.

 Defendant contends that it was released from its guaranties because plaintiff assigned "all right, title and interest" in the rental agreements. Shortly after a rental agreement would be entered into plaintiff would discount the contract with the Everglades Bank of Fort Lauderdale. This practice was followed with the three guaranties involved here. The general rule is that a guarantor is released from his obligations where the creditor assigns his contract to a third party. Stearns (supra § 6.5). Following default plaintiff paid the Everglades Bank the amount due on the notes which the bank previously had taken back. The bank then reassigned the rental agreements to plaintiff. The rule is generally not applied to facts of this nature. The rule rests upon the principle that the assignment would be a material alteration because the surety may have extended his promise because of his reliance on one or the other of the original parties or because the addition of the new party would materially affect the operation of the instrument. In this case the promise of the guarantor, the extension of credit by the creditor, and the obligation of the principal are in no way changed. The plaintiff continues to perform his duties under the contract and only the direction of the payment from the principal is affected. This is not a material alteration. We also note that at the time this action began the bank had reassigned the rental agreements to the plaintiff.

 Defendant's last point is that the amount of the award is not supported by the evidence. We have read through the arguments on this point and believe that the lower court's determination finds support in the record. As to defendant's contention that the award did not take into consideration the

fact that maintenance was not provided to the defaulted franchisees, we merely note that defendant should have pleaded this item in mitigation of damages and had the burden of proving it. Testimony was introduced to show that an item of maintenance was insurance costs and these were not suspended following the defaults. The court's findings regarding the amount of the judgment will not be upset.

 Defendant has argued several other points on which comment should be made. The guaranty referring to "Henry's Drive-In #1" was matched with a rental agreement signed with "Florida Drive-In Corp. No. 1." We do not believe that this difference constituted a material variation from the terms of the guaranty. Evidence was introduced that both operations were identical. The term Henry's Drive-In No. 1 was used to designate that the Florida Drive-In Corp. No. 1 was the first franchisee in Florida. Moreover the identity of the two names was not questioned at the trial and there is no doubt that the signs were installed at the correct location. In Scovill Mfg. Co. v. Cassidy (supra) where a corporation changed its name the guarantor continued to be held upon his promise.

Defendant also notes that the lease agreements contained an acceleration clause in the event of default while the instruments of guaranty did not. No payments were accelerated in this case. This phrase was not in any way detrimental to or inconsistent with the instrument of guaranty.

 Defendant has argued that any evidence introduced in the lower court—and especially the letters containing options to purchase for $1—for the purpose of demonstrating that the lease agreements were exactly what was contemplated by the instrument of guaranty or that the exhibits were not inconsistent, should not have been introduced because it violated the statute

305

of frauds (Ill Rev Stats 1961, c 59, § 1) and the parol evidence rule. Section 1 of the statute of frauds provides that "no action shall be brought . . . to charge the defendant upon any special promise to answer for the debt, default or miscarriage of another person, . . . unless the promise or agreement upon which such action shall be brought, or some memorandum or note thereof, shall be in writing, and signed by the party to be charged therewith. . . ." It must be emphasized that this action was brought to enforce an instrument of guaranty. Nowhere in these proceedings has evidence been introduced either written or oral to vary the terms or the intent of the instrument of guaranty. The letter containing the option to purchase was a part of the agreement between the principal and the debtor, referred to in paragraph 8 of the rental agreement and entirely in writing. This letter had nothing to do with the instrument of guaranty. Any evidence of a parol nature which was introduced into the proceedings shed light on the background and circumstances of the rental agreement and did not seek to influence the interpretation of the instrument of guaranty. Parol evidence was properly admitted here to determine the interpretation of the rental agreement. Bertlee Co., Inc. v. Illinois Pub. & Printing Co. (supra); Dillow v. Hileman, 300 Ill App 509, 510, 21 NE2d (1939); 3 Corbin on Contracts §§ 580, 581 (1960).

■■■ Plaintiff is entitled to five (5) percent interest from the date each principal defaulted. Section 2 of the Interest Act (Ill Rev Stats c 74, § 2) provides inter alia:

> "Creditors shall be allowed to receive at the rate of five (5) per centum per annum for all moneys after they become due on any bond, bill, promissory note, or other instrument of writing; . . ."

A guaranty has been held to be within the definition of "other instrument of writing." LeRoy State Bank

v. J. Keenan's Bank, 261 Ill App 441, 452 (1931); Holmes v. Standard Oil Co. of Indiana, 183 Ill 70, 74, 55 NE 647 (1899); Gridley v. Capen, 72 Ill 11, 13 (1874).

Accordingly, the judgment of April 17, 1963, is reversed and the cause remanded with directions to enter judgment for the plaintiff in the amount of $49,-117, together with costs and interest computed at five (5) percent per annum from the date each guaranty fell due.

Judgment reversed and cause remanded with directions.

BURKE, P. J. and FRIEND, J., concur.