**KINGSBERRY HOMES, a Division of Boise Cascade Corporation, Plaintiff-Appellee,**

v.

**Maurice E. COREY and Luke M. Hebble, Defendants-Appellants.**

**No. 71–1429.**

United States Court of Appeals, Seventh Circuit.

March 27, 1972.

James E. Whitmire, Jr., Silvis, Ill., for defendants-appellants.

Robert J. Noe, Moline, Ill., for plaintiff-appellee.

Before DUFFY, Senior Circuit Judge, STEVENS, Circuit Judge, and GRANT*, District Judge.

* Chief District Judge Robert A. Grant of the Northern District of Indiana is sitting by designation.

I. The guarantee reads in pertinent part: "Each of the undersigned further agrees that this guarantee shall remain in full force and effect until revoked or termi-

DUFFY, Senior Circuit Judge.

This is an appeal of an order of the District Court granting plaintiff's motion for a summary judgment against defendants Maurice E. Corey and Luke M. Hebble, on Count II of the complaint. (Rodney Francis was a third partner and co-defendant but did not appeal herein).

Defendants were joined in a partnership for the purpose of building homes and erecting pre-fabricated home packages. The defendants who were customers of Kingsberry Homes (Kingsberry) desired, in early 1967, to have an open account status. Kingsberry insisted that Maurice E. Corey, Luke M. Hebble and Rodney Francis execute a request for credit clearance and submit personal financial statements and sign a personal guarantee.

The financial statements submitted showed a substantial net worth. The request for credit was approved. The guarantee was signed by all three partners on March 9, 1967.

The testimony of plaintiff showed that thereafter all shipments to Hebble & Associates were made in reliance upon the guarantee and the personal credit of the individual guarantors.

Sometime later, the three guarantors who had been operating under the name of Hebble & Associates, decided to do business as a corporation under the name of Hebble & Associates, Inc. The former partners were the sole stockholders and officers of the new corporation. No formal notice of the incorporation on November 16, 1967 was given to plaintiff. Furthermore, the guarantee never was revoked or terminated (as provided for by its terms).[1] The guarantors, at no time, informed Kingsberry that they no longer intended to be bound by their

nated in writing signed and delivered to Kingsberry Homes, Division of Boise Cascade Corporation, and acknowledged by Kingsberry Homes, Division of Boise Cascade Corporation, and even after any such revocation or termination shall be and remain effective as to all obligations of Purchaser then outstanding; . . . ."

obligation. Shipments continued to be made to Hebble & Associates.

On or about October 29, 1968, a pre-built home package of the value of $16,118.90 was shipped by Kingsberry to Hebble & Associates. When the payment on this home was not made, plaintiff sued on the guarantee. Summary judgment was entered against the defendants. This appeal followed.

It is clear in this case that it was the intent of the parties to exchange an open account status in return for a pledge of individual responsibility. That intention did not change after the formation of a corporation eight months later. Business transactions between the parties continued after the corporation was formed just as they had prior to that development.[2]

The guarantee signed by defendants was an Illinois contract. Illinois courts have held that contracts of guarantee must be construed so as to make them enforceable where it can be done without violence to the intent of the parties. Castle v. Powell, 261 Ill.App. 132 (1931).

In Scovill Manufacturing Company v. Cassidy, 275 Ill. 462, 114 N.E. 181 (1916), a corporation changed its name but the Court held guarantor remained obligated on his promise. See also Claude Southern Corporation v. Henry's Drive-In, Inc., 51 Ill.App.2d 289, 300, 201 N.E.2d 127, 132, 133 (1964), where the Court in discussing a guarantee agreement stated it should be construed ". . . according to what is fairly to be presumed to have been the understanding of the parties."

Illinois courts frequently have invoked the doctrine of estoppel in situations where guarantors attempt to avoid the terms of such an agreement. See Phoenix Mfg. Co. v. Bogardus, 231 Ill. 528, 83 N.E. 284 (1907); McCasland v. O'Brien, Green & Co., 57 Ill.App. 636 (1894). It should be noted that in the guarantee which we are considering, it was stated "Each of the undersigned [guarantors] further agrees that this guarantee shall remain in full force and effect until revoked or terminated in writing signed and delivered to Kingsberry Holmes. . . ."

The guarantors furnished personal credit and financial information to obtain credit. They continued to do business under an almost identical name after incorporation. They accepted shipments (including the one in question), reaped the benefits of the guarantee and then attempted to avoid liability when called upon to honor their commitment. This is an appropriate case for invoking the doctrine of estoppel.

On the basis of the decisions of Illinois courts which construe guarantees liberally, and because the doctrine of estoppel is herein applicable, the action of the trial court in granting summary judgment to the plaintiff must be and is

Affirmed.

STEVENS, Circuit Judge (dissenting).

Defendants Corey and Hebble were partners doing business as "Hebble and Associates" when they made their first purchase from plaintiff in October of 1966.[1] A few months later, a third party, Rodney Francis, joined the firm, and on March 9, 1967, Corey, Hebble and Francis executed a guarantee of the obligations of "Hebble & Associates (hereinafter called Purchaser)." [2]

---

2. Significant is the fact that the standard order form for the house package delivered to defendants for which they did not pay, indicated the order was from "Hebble and Associates." No indication of the incorporation was noted. Furthermore, it is evident from the order form that the defendants enjoyed "open account" status. (Appendix, page 30).

1. A.26.

2. A.20–22. An affidavit filed by Corey and Hebble in opposition to the motion for summary judgment stated in part:
"At the time the guarantee was executed we were told by Plaintiff that this was necessary simply so that Rodney P. Francis' checks could be accepted." A.50.

Although his name does not appear on the document, Merle W. Greene, plaintiff's Regional Sales Manager, witnessed the execution of the guarantee.[3] Greene appears to have been well acquainted with defendants' business. On November 16, 1967, the corporation "Hebble and Associates, Inc." was organized.[4] In the "winter of 1967" Greene knew the corporation had been formed.[5] With his knowledge, invoices continued to be submitted to "Hebble and Associates," apparently without the addition of "Inc."[6] Bills were regularly paid with corporate checks, and no attempt to conceal the corporate form of the business was made.[7] The total volume of business between the parties amounted to approximately $570,800.[8] In April of 1969 Greene employed Francis to work for the plaintiff.[9] Francis, as a guarantor, was named as a defendant, but has not appealed.

Quite clearly the guarantee does not in terms apply to the obligations of the corporation.[10] Not unreasonably, however, in view of the possibility of confusion between "Hebble and Associates" and "Hebble and Associates, Inc.," the court holds that defendants' failure to revoke the guarantee or to give formal notice of the incorporation estops them from denying liability. I would place the burden of making sure that the documentation was in proper form on the other side of the bargain.

Since the knowledge of its Regional Sales Manager is imputed to plaintiff, it knew that it was doing a substantial volume of business with a corporate customer. Since the guarantee was prepared by its own credit department, in my judgment plaintiff should be charged with the knowledge that it was inapplicable to purchases by the corporation.[11] Since the uncollectable receivable amounts to less than 3% of the customer's purchases, I think plaintiff's credit department should charge the loss to poor communication with its sales department. In short, since both parties appear to have acted in good faith, I regard this as a rather ordinary business transaction which should not bring the equitable doctrine of estoppel into play. I would therefore give the guarantee no greater effect than its plain language imports.

3. A.27.

4. A.31.

5. A.50.

6. At least this is true with respect to the invoice in question. See A.30.

7. A.50.

8. A.28.

9. A.26–28.

10. I base this conclusion on the language of the instrument itself, as well as the fact that the corporation was not organized until eight months after the guarantee was executed. In March of 1967 none of the parties contemplated that the corporation would later be formed. See A.50.

11. Moreover, since plaintiff's credit department ignored its own rules which call for periodic financial statements from its open account customers, see A.34–35, it does not seem inequitable to infer that the continued extension of credit in 1969 was attributable more to the fact that defendants had bought and paid for over a half a million dollars worth of merchandise than to the fact that plaintiff had a 1967 guarantee in its files.