PENNSYLVANIA TRUST CO. OF PITTSBURGH v. McELROY.

(Circuit Court of Appeals, Third Circuit. December 26, 1901.)

1. GUARANTY—ESTOPPEL OF GUARANTOR TO DENY LIABILITY.

A limited partnership executed its note to a bank as collateral security for such customers' notes as the bank should discount on its indorsement, a guaranty by one of the members of the firm being indorsed on such collateral note. Among the notes discounted by the

bank for the firm were a number which were fictitious or forged. *Held*, that·the guarantor as well as the firm was bound by the representations of the latter that the notes were valid, and could not assert their invalidity to avoid liability on his guaranty.

**2. SAME—DISCHARGE OF GUARANTOR—SURRENDER OF NOTES.**

A limited partnership executed its note for $75,000, on which was indorsed a guaranty by one of its members. The note was delivered to a bank as collateral security for such customers' notes as the bank should discount for the firm on its indorsement. The firm became insolvent, at which time the bank held such notes to an amount exceeding $75,000. Subsequently the guarantor delivered to the bank three notes of a third person indorsed by him, each for $25,000, and the bank surrendered to him the greater part of the notes discounted for the firm. *Held*, that as between the parties such surrender operated as a payment, and discharged the guarantor from liability on his guaranty, except to the extent of the discounted notes still retained by the bank.

Appeal from the District Court of the United States for the Western District of Pennsylvania, in Bankruptcy.

William A. Way, for appellant.

Charles P. Orr, for appellee.

Before ACHESON, DALLAS, and GRAY, Circuit Judges.

ACHESON, Circuit Judge. This is an appeal from an order of the district court, sitting in bankruptcy, sustaining a proof of claim by Samuel M. McElroy, trustee for the Citizens' National Bank of Pittsburgh, against the estate of Henry Butterfield, a bankrupt. The proof of claim was upon Henry Butterfield's guaranty of a judgment note of Lyons, Butterfield & Co., a limited partnership association under the laws of Pennsylvania, dated May 7, 1896, for $75,000, given by the limited partnership to the bank, the guaranty being indorsed on the note. It is conclusively shown by the evidence and is a conceded fact that the judgment note was given and accepted as collateral security for a line of commercial paper consisting of promissory notes and acceptances which the limited partnership might thereafter receive, from time to time, from its customers ·for merchandise sold and delivered, and which the bank might purchase from the limited partnership as indorser. Accordingly the bank from time to time did purchase from the limited partnership as indorser commercial paper which was paid as it matured until the month of September, 1899, when the limited partnership ceased to do business, and Butterfield acquired its assets. At that time the bank held promissory notes and acceptances in small sums, which it had purchased from the limited partnership as indorser to an aggregate amount somewhat in excess of $75,000. It was then discovered that this paper was nearly all worthless, because the apparent makers were fictitious persons or their names were forged. On September 14, 1899, the bank procured from Henry Butterfield three promissory notes, each for $25,000, made by Mrs. Jane B. Foster to the order of Henry Butterfield, and by him indorsed. No cash or other thing of value was given by the bank to Mrs. Foster or Butterfield for these notes. But afterwards, early in the year 1900, the bank surrendered to Henry Butterfield all the notes it had purchased from the limited partnership, and then held, except notes to the amount of $3,882.79,

which it still retains. The proof of claim which the referee in bankruptcy allowed and the court sustained includes not only these retained notes, but also the surrendered notes.

We are not convinced that the court erred in sustaining the proof in so far as it embraced the notes for $3,882.79, which the bank retained and holds. The limited partnership, by its indorsement having avouched that these notes were genuine business paper, and thus induced the bank to purchase them, certainly could not successfully set up as against its liability upon the collateral judgment note that the notes here in question were not received from customers for merchandise sold and delivered, but were fictitious or forged. As then the limited partnership could not make such defense, neither under the peculiar circumstances of the case is it available to the guarantor Henry Butterfield. He was a member of the limited partnership, and its secretary and treasurer. Although not individually liable for its debts, he was personally interested in its financial success. Undoubtedly the purpose of his guaranty was that the limited partnership might realize upon and receive the proceeds of commercial paper indorsed by the limited partnership and purchased from it by the bank. Now, the limited partnership did receive from the bank the proceeds from the purchase of these notes. To hold the guarantor then liable therefor violates no express provision of the judgment note or the indorsed guaranty, and does not go beyond the substantial purpose and true intent of the guaranty.

But in respect to so much of the allowed proof of claim as embraced the surrendered notes, we are not able to concur in the views of the learned judge of the district court. The judgment note, with the guaranty indorsed thereon, was a mere collateral security for the promissory notes purchased and held by the bank. The promissory notes themselves constituted the principal debt. The bank had no independent claim upon or by virtue of the judgment note apart from the commercial paper it purchased and held. Now, it appears that, having received from Henry Butterfield the Foster notes for $75,000, the bank surrendered to him the promissory notes involved here without reservation to it of any right, title, or interest therein. The surrender seems to have been absolute. It is not shown, nor is it even pretended, that there was any express agreement or declaration to the contrary. There was no consideration for the Foster notes given by the bank other than the surrender of these old notes. The bank got Butterfield's indorsement of the Foster notes, which was the full equivalent of his guaranty here in question. It may be well to note that there is nothing to show that Butterfield was a party to any fraud on the bank. In the absence of anything expressed to the contrary, the circumstances, we think, irresistibly raise the inference that by the surrender of the notes they were satisfied or extinguished, so far as the bank was concerned. If the bank did not so intend, why was the surrender made? Unless the surrender of the old promissory notes was intended to be equivalent to their cancellation as respects the bank, there is no rational explanation of this transaction. Observe the facts. Informed of the fictitious or forged character of the purchased promissory notes, the bank accepts from

Henry Butterfield the notes of a third person for substantially the like amount, with his indorsement, and then, without any reservation whatever, delivers up to Butterfield the old notes, which were at once the evidence of the original indebtedness and the very basis of the bank's claim. It is a matter of no moment that the surrender was not simultaneous with the acceptance of the Foster notes. The purchased commercial paper we may suppose had to be got together. At any rate, the fact of the surrender is the material thing, not the time when it occurred. The court below was much influenced by the circumstance that the judgment note was not surrendered, but was retained by the bank. This fact, however, has no such significance as the court assumed; for the bank did not give up all the commercial paper which was secured by the collateral judgment note, but retained and still holds part thereof, and it has entered into the proof now under consideration. This fully explains why the judgment note was not surrendered, and repels any inference from the retention unfavorable to the trustee in bankruptcy (the appellant) in respect to the surrendered paper.

Authority is not lacking to sustain our conclusion as to the effect of the acceptance of the Foster notes and the surrender of the old notes in the circumstances which here existed. Thus, in Arnold v. Camp, 12 Johns. 409, 7 Am. Dec. 328, it was held that where a promissory note was given by a partnership, and the payee afterwards took the individual note of one of the partners for the amount, and gave up the partnership note, it was a payment of that note. And in Hess v. Dille, 23 W. Va. 90, 97, it was decided that where the new note is that of a third person the surrender of the old note will be treated prima facie as a discharge of the old note, and a release of the maker from personal liability thereon.

That the discharge or extinguishment of the principal obligation precludes resort to the collateral, in the absence of a saving agreement, is a proposition which needs no citation of authorities for its support; and it is also an accepted principle that where the primary obligation is satisfied or extinguished this will operate to release a guarantor. 14 Am. & Eng. Enc. Law (2d. Ed.) p. 1162.

The order of the district court sustaining the claim of Samuel M. McElroy, trustee for the Citizens' National Bank of Pittsburgh, in the sum of $78,750, against the estate of Henry Butterfield, bankrupt, is reversed, and the cause is remanded to that court, with direction to disallow said claim, except in so far as it is founded on notes retained and held by said bank, as per Exhibit A, amounting to $3,882.79.