WISCONSIN TRANSPORTATION COMPANY, Respondent, vs. VILLAGE OF WILLIAMS BAY, Appellant.

*December 9, 1931—March 8, 1932.*

For the appellant there were briefs by *A. L. Godfrey* of Elkhorn, attorney, and *M. O. Mouat* and *Hiram M. Nowlan*, both of Janesville, of counsel, and oral argument by *Mr. Nowlan* and *Mr. Godfrey*.

For the respondent there were briefs by *Franklin J. Tyrrell* of Lake Geneva and *Simmons, Walker, Wratten & Sporer* of Racine, and oral argument by *John B. Simmons*.

The following opinion was filed January 12, 1932:

NELSON, J. The plaintiff is a Wisconsin corporation having its principal office and place of business in the city of

Lake Geneva. It is the owner of a fleet of steam and motor boats and is engaged in the business of transporting passengers, mail, and freight on Geneva Lake. Its transportation business is seasonal, being confined to the late spring, summer, and early fall of each year. Geneva Lake freezes over during the winter and all lake transportation is necessarily suspended. During the seasons when transportation is carried on, the plaintiff's boats ply the waters of Geneva Lake principally during the daytimes and evenings; at night the motor boats are tied up at the dock in the city of Lake Geneva and the steam boats are docked for refueling purposes at a railroad pier which extends into the lake from the village of Williams Bay. The village of Williams Bay is located on an arm of Geneva Lake, also known as Williams Bay, but does not extend beyond the shore line of the lake. In the fall of each year commencing about the first of October the plaintiff removes all of its motor and steam boats from the lake to a tract of land owned by it within the corporate limits of the village of Williams Bay. The work of removing the boats from the water ordinarily requires about six weeks. Removal of its boats from the lake during the winter season is for the purpose of avoiding the ice hazard and consequent damage to the boats, and also for the purpose of repairing and reconditioning them. All of plaintiff's boats involved in this controversy remain on plaintiff's lands at Williams Bay from October until about the 15th of March when the work of hauling them back to the lake begins. Returning the boats to the lake ordinarily requires about six weeks' time. For many years prior to 1929 the plaintiff's boats were all assessed and taxed by the city of Lake Geneva. Prior to that year no question seems to have been raised as to the right of the city of Lake Geneva to tax them, but in that year the village of Williams Bay assessed all of the plaintiff's boats for taxation pur-

poses. Taxes were levied. The plaintiff refused to pay the taxes and, upon such refusal, the treasurer of the village levied upon plaintiff's entire fleet of boats and advertised them for sale. The plaintiff thereupon, under duress of said levy and threatened sale and under protest, paid to said treasurer the sum of $651. This action was then commenced to recover the amount paid. The trial court concluded that the boats in question are properly classed as "personal property having no fixed location and were taxable at the place where the owner or person in charge or possession thereof resides," as provided by sec. 70.13, Stats. The appellant contends that the trial court was in error in so concluding and insists that all of the boats were properly taxable where "customarily kept," and that the place where said property was customarily kept, within the meaning of the statute, was the village of Williams Bay.

The question for decision is whether, under the circumstances of this case, the boats in question were taxable by the city of Lake Geneva or by the village of Williams Bay or whether some of them were taxable in one place and some in another. It is, of course, conceded that the plaintiff's boats are personal property and are taxable as such under our laws. Sec. 70.15 relates to the assessment of vessels and, so far as it is material to this controversy, provides as follows:

"Section 70.15. *Assessment of vessels.* (1) That in consideration of an annual payment into the treasury of any town, village or city where such property is assessable by the owner of any steam vessel, barge, boat or other water craft, owned within this state, or hailing from any port thereof, and employed regularly in interstate traffic, of a sum equal to one per cent. per net ton of the registered tonnage thereof, said steam vessel, barge, boat or other water craft shall be and the same is hereby made exempt from further taxation, either state or municipal.

"(2) . . . All vessels, boats or other water craft not regularly employed in interstate traffic and all private yachts or pleasure boats belonging to inhabitants of this state, whether at home or abroad, shall be taxed as personal property."

The plaintiff's boats are not engaged in interstate traffic and clearly fall within the provisions of sec. 70.15 (2), *supra*. This section provides that such boats shall be taxed as personal property but does not fix the exact situs for taxation.

Sec. 70.13 provides where all personal property not otherwise specifically provided for shall be assessed. So much of said section as requires consideration is as follows:

"Section 70.13. *Where personal property assessed.* All personal property shall be assessed in the assessment district where the same is located or customarily kept, except as otherwise specifically provided. . . . Personal property having no fixed location shall be assessed in the district where the owner or the person in charge or possession thereof resides, except as provided in subsection (5) of this section."

It must be presumed that the enactment of sec. 70.13 resulted in a comprehensive scheme for the taxation of all personal property within this state except such as is specifically declared to be exempt from taxation or is otherwise provided for. It seems clear that the legislature had in contemplation three different classes of personal property and provided generally where each class should be assessed for taxation purposes. One class of property is to be assessed where the same is located, another class where the same is customarily kept, and still another class of property, which has no fixed location, is to be assessed in the district where the owner or the person in charge or possession thereof resides, except as provided in sub. (5) of sec. 70.13. It is conceded by the plaintiff that the boats

involved in this controversy were not located, within the meaning of the statute, at Lake Geneva, but it earnestly contends that its boats fall within that class of property which has no fixed location and therefore should be assessed and taxed at the city of Lake Geneva where its principal office is located. As before stated, the defendant contends that plaintiff's boats fall clearly within that part of the statute which provides for their taxation where customarily kept. The words "customarily kept" have not apparently received judicial construction. We think, however, that their meaning is clear when considered in connection with the various kinds of personal property to which such words are applicable. While substantially all personal property is capable of being moved from one place to another, probably the greater portion thereof within this state has a location which may be considered fixed. There is also a rather large class of personal property which has no fixed location but which is ordinarily brought back to some certain place where it is stored or maintained when not in use. As to such property the important question to determine is, Where is it customarily kept? As to the property which is taxed where customarily kept, it seems clear that the legislature had in mind a large amount of personal property within this state which has no fixed location, which is moved about from place to place for much of the time but which is brought back at some regular interval or intervals to a given place where it reposes for a time in a state of rest, repose, or non-use. The plaintiff contends that the words "customarily kept" should be construed to be synonymous with "customarily used." It is quite apparent that the place where an article is customarily kept may not be the place where such article is customarily used. We think the simple words of the statute are not susceptible of such a construction.

Under the undisputed facts in this case we are impelled to hold that the plaintiff's boats were customarily kept at

Williams Bay, within the meaning of the statute, and that they were therefore taxable by that village.

The conclusion we have reached seems to be justified, not only by the plain language of the statute itself but also on sound principles of taxation. The plaintiff's boats were stored for substantially six months or more each year at Williams Bay. During all of such time they were subject to the police and fire protection afforded by that village. For such benefits it seems only just that the plaintiff should contribute to the expense of the village government. *Chicago & N. W. R. Co. v. State,* 128 Wis. 553, 108 N. W. 557.

The eminent counsel who appeared for the plaintiff in this court contends with great earnestness that vessels are of that class of property which has no fixed location, and cites many decisions which hold that vessels engaged in interstate or international traffic on the high seas or on the Great Lakes cannot be said to have an actual permanent situs and are properly taxable at the home port or domicile of the owner. *Johnson v. De Bary-Baya Merchants Line,* 37 Fla. 499, 19 South. 640, 37 L. R. A. 518; *Atlantic Maritime Co. v. Gloucester,* 228 Mass. 519, 117 N. E. 924; *Hays v. Pacific Mail S. S. Co.* 17 How. 596; *Ayer & Lord Tie Co. v. Kentucky,* 202 U. S. 409, 26 Sup. Ct. 679; *Southern Pac. Co. v. Kentucky,* 222 U. S. 63, 32 Sup. Ct. 13; *Yost v. Lake Erie Trans. Co.* (C. C. A.) 112 Fed. 511; *People ex rel. Pacific M. S. Co. v. Commissioners, etc.* 58 N. Y. 242, 246; *Olson v. City and County of San Francisco,* 148 Cal. 80, 82 Pac. 850, 2 L. R. A. n. s. 197, 113 Am. St. Rep. 191, 7 Ann. Cas. 443.

While the cases cited undoubtedly state the rule applicable to the taxation of vessels engaged in interstate or international traffic, they can be given little weight in deciding this controversy in view of our statutes which specifically apply. Sec. 70.11 seems clearly to recognize the established law applicable to the taxation of interstate or

international vessels in providing that "all vessels, boats, barges or other water craft belonging to inhabitants of states other than Wisconsin and laid up for repairs in Wisconsin ports," are exempt from taxation in this state.

We are not unmindful of the fact that controversies may arise in which it may be difficult to determine whether personal property is customarily kept in one place or another. However, the facts in this case do not present such a difficulty. The fact that these boats were taken out of the lake each fall and stored for about six months on lands belonging to the plaintiff where they were repaired and reconditioned is indeed a persuasive, if not a controlling, circumstance.

We have examined a number of opinions rendered by the Wisconsin Tax Commission which involve the application of sec. 70.13 to various situations. The conclusion of the court herein seems to be in complete harmony with the uniform construction of this statute by the Tax Commission.

It is conceded by the defendant that it had no authority to tax two of the motor boats, the Helen and Gipsy, because such boats had been destroyed in the fall of 1928 and were not in existence when the assessment involved in this appeal was made. The plaintiff is clearly entitled to recover the amount of the taxes paid on those boats together with interest thereon from the date of payment.

The judgment herein must be modified so as to permit the plaintiff to recover the taxes paid by the plaintiff on the two boats which were not in existence at the time of the assessment herein. The judgment in all other respects must be reversed.

*By the Court.*—Judgment reversed, with directions to modify the judgment in accordance with the opinion.

A motion for a rehearing was denied, with $25 costs, on March 8, 1932.