236

CADY, Appellant, v. ALEXANDER CONSTRUCTION COMPANY, Respondent.*

*November 29, 1960—January 10, 1961.*

For the appellant there was a brief by *John G. Nestingen* of Spring Valley, and *Kenneth Hayes* of Hudson, and oral argument by *Mr. Nestingen*.

For the respondent there was a brief and oral argument by *Robert R. Gavic* of Spring Valley.

HALLOWS, J. The problem presented divides itself into three parts: 1. Has Wisconsin the jurisdiction to tax such personal property? 2. Do the existing laws tax such property? 3. Is the town of Cady the proper assessment district?

It has been generally recognized that the state of the domicile of the owner may tax personal property where such property has not acquired a situs elsewhere for tax purposes. *Van Dyke v. Tax Comm.* (1940), 235 Wis. 128, 292 N. W. 313; affirmed *per curiam* in *Van Dyke v. Wisconsin Tax Comm.* (1940), 311 U. S. 605, 61 Sup. Ct. 36, 85 L. Ed. 383. Personal property acquires a taxable situs at the domicile of its owner by the application of the maxim *mobilia sequuntur personam,* which applies with less logic to tangibles than to intangible personal property. 1 Beale, Conflict of Laws, p. 546, sec. 118C.8; 2 Cooley, Taxation (4th ed.)', pp. 955–981, secs. 440–451. This maxim, however, is not to be literally applied and does not preclude a state, in which

tangible personal property has acquired a situs as distinguished from mere physical presence, from taxing such property. *Coe v. Errol* (1886), 116 U. S. 517, 6 Sup. Ct. 475, 29 L. Ed. 715; 51 Am. Jur., Taxation, p. 467, sec. 452. The basis of the rule is that the personal property enjoys the protection of the state where it is located and should be made to contribute to the expenses incident to its protection in the state in common with other personal property.

The difficulty with applying the rule is the determination of when movable personal property acquires a situs for tax purposes. See Jurisdiction to Tax Tangible Personal Property, 44 Iowa Law Review, 412. It has been said that such property acquires a situs when it becomes "commingled with the general property of the state," *Old Dominion Steamship Co. v. Virginia* (1905), 198 U. S. 299, 25 Sup. Ct. 686, 49 L. Ed. 1059; or "mingled" with the general property of the state, *Delaware, L. & W. R. Co. v. Pennsylvania* (1905), 198 U. S. 341, 25 Sup. Ct. 669, 49 L. Ed. 1077; or "permanently located there," *Union Refrigerator Transit Co. v. Kentucky* (1905), 199 U. S. 194, 26 Sup. Ct. 36, 50 L. Ed. 150; or "incorporated in" the local property, *Southern Pacific Co. v. Kentucky* (1911), 222 U. S. 63, 32 Sup. Ct. 13, 56 L. Ed. 96. Such language contemplates some degree of permanency as distinguished from temporary or transitory. The concept of taxable situs means more or less permanent location, but does not include the characteristics of permanency ascribed to real estate or the fact the owner has no present intention of removing it. It may include the idea of more or less permanent location for the time being. 51 Am. Jur., Taxation, p. 468, sec. 454. See also Anno. 110 A. L. R. 707, "Situs as between different states or countries of tangible chattels for purposes of property taxation."

Situs means more than simply the place where the property is physically present. It excludes mobile personal property which happens to be in transit through the taxing state

at the moment when the occasion for taxing arises. Situs may include property which for some definite purpose of its owner has come to rest within the boundaries of a state, but not if the interruption is beyond the control of the owner and only for a brief period of time. 1 Beale, Conflict of Laws, p. 551, sec. 118C.11, and p. 561, sec. 118C.18; Goodrich, Conflict of Laws (3d ed.), p. 76, sec. 46.

Perhaps the concept of situs for tax purposes stated in terms of commingled with the property of the state, or mingled or incorporated in local property, means no more than the state wherein the personal property is physically present must have sufficient contact or relationship with the property in order to form, in fairness, a basis for taxing it. By analogy to the reasoning in the interstate airline cases, the word "situs" must be given a realistic meaning. Originally airplanes in interstate commerce were taxed at the domicile of the owner. *Northwest Airlines v. Minnesota* (1944), 322 U. S. 292, 64 Sup. Ct. 950, 88 L. Ed. 1283. Later the United States supreme court in approving an apportionment rule in *Braniff Airways v. Nebraska Board* (1954), 347 U. S. 590, 74 Sup. Ct. 757, 98 L. Ed. 967, held that 18 stops a day by the appellant's airplanes was sufficient contact with Nebraska to sustain a tax on an apportionate-rule basis, even though the same airplanes did not land every day and even though none of the airplanes was continually within the state. The modern idea of situs seems to be whether the taxing state has sufficient contact with the personal property sought to be taxed to justify in fairness the particular personal-property tax.

While taxation of tangible personal property is essentially a state function, the supreme court of the United States has considered the problem of the proper place of taxation when the point has been raised that the taxation system of a state contravened the due-process, equal-protection, or commerce clause of the federal constitution. Some examples:

*Braniff Airways Case, supra; Northwest Airlines Case, supra; Safe Deposit & Trust Co. v. Virginia* (1929), 280 U. S. 83, 50 Sup. Ct. 59, 74 L. Ed. 180; *Frick v. Pennsylvania* (1925), 268 U. S. 473, 45 Sup. Ct. 603, 69 L. Ed. 1058; *Union Refrigerator Transit Co. v. Kentucky, supra; Delaware, L. & W. R. Co. v. Pennsylvania, supra; Pullman's Car Co. v. Pennsylvania* (1891), 141 U. S. 18, 11 Sup. Ct. 876, 35 L. Ed. 613.

In considering the power to tax construction machinery, at least two courts have held that because of the very nature of road-construction machinery and the business of its owner, such machinery could not acquire a situs other than the domicile of the owner. *Capital Construction Co. v. Des Moines* (1931), 211 Iowa 1228, 235 N. W. 476; *Commonwealth v. American Dredging Co.* (1888), 122 Pa. 386, 15 Atl. 443. However, other courts have found no such difficulty and have held construction machinery employed in construction work in a state other than that of the owner's residence may acquire a local situs in the state in which it is used. In *Hamilton & Gleason Co. v. Emery County* (1930), 75 Utah 406, 285 Pac. 1006, the court sustained a personal-property tax on construction equipment belonging to a Colorado corporation which was brought into Utah to do construction work on a railroad. The court rejected the argument that the property was in the state for temporary use and the owner intended to remove it as soon as the contract was completed. The property was brought into Utah sometime in 1925 and was removed by April 30, 1926. In *Arundel Corp. v. Sproul* (1939), 136 Fla. 167, 186 So. 679, a personal-property tax was upheld on dredges and dredging equipment used by a nonresident in constructing dikes around Lake Okeechobee in Florida under a contract with the federal government. Its owner intended to return the property to Baltimore after completing the contract. The property was in Florida from June, 1934, to December,

1935. In *Griggsry Construction Co. v. Freeman* (1902), 108 La. 435, 32 So. 399, blacksmith tools and commissary store goods kept as part of a construction outfit and owned by a nonresident were held taxable. The court reasoned that the property, because of its presence in the state for six months to construct a railroad bed, had acquired a situs because it was no longer in transit and had enjoyed the benefit and protection of the laws of Louisiana. In *Eoff v. Kennefick-Hammond Co.* (1906), 80 Ark. 138, 96 S. W. 986, equipment of a nonresident owner used for constructing a roadbed in Arkansas for a railroad was held subject to a personal-property tax on the ground it was not in transit and was in the state chiefly, if not solely, for its owner's use and profit. The court reasoned the property for the time being was incorporated in the bulk of the property of the state and was distinguishable from other property in the state in no respect except the intention of the owner to remove it at some future time. See also *Gromer v. Standard Dredging Co.* (1912), 224 U. S. 362, 32 Sup. Ct. 499, 56 L. Ed. 801, wherein a dredge, tugboat, scows, and launch were held to have a situs in Puerto Rico while there to perform a contract, although owned by a Delaware dredging corporation; and *North American Dredging Co. v. State* (Tex. Civ. App. 1918), 201 S. W. 1065, wherein the court held that dredging and piping equipment, constituting a part of a movable sea-going dredge-boat plant used in the performance of a dredging contract in Texas and pursuant to the business of its nonresident owner, had acquired taxable situs.

In the instant case the construction equipment was in the state of Wisconsin for somewhat less than a year and was not in transit or merely passing through the state, but was being used by its owner for the construction of a highway. True, the owner intended to remove the property upon completion of the contract, but the intention of the owner is not the deciding factor in determining the taxable status of personal

property. During the months that the property was in Wisconsin, it and its owner received the benefits of our laws, the same as similar property so owned and used by Wisconsin residents. From the standpoint of the nonresident owner, it is true the property was in Wisconsin temporarily in a broad sense, but temporary is a relative term. The length of time the property was in Wisconsin depended upon the size of the construction job. The property was used for the purpose for which it was constructed and for the benefit of its owner's business. The property, in our opinion, had sufficient contact with this state to acquire a taxable situs and to justify a personal-property tax thereon by the state.

The second question is whether the state of Wisconsin by its laws purports to tax this personal property. Sec. 70.01, Stats., 11 W. S. A., p. 6, provides: "Taxes shall be levied, under this chapter, upon all general property in this state except such as is exempted therefrom." The stipulation entered into in the trial court concedes that the personal property is general property within the meaning of this section and was not specifically exempted. There is no express limitation in sec. 70.01 that general property in this state must be owned by residents thereof, and its language is broad enough to cover property of nonresidents. The words "property in this state" mean property which has acquired a taxable situs in the state. The legislature did not intend to tax by such language personal property which, although physically present in the state, had not acquired a taxable situs by its contact or relationship with the state. This reasoning is substantiated by reference to sec. 70.13, 11 W. S. A., p. 68, which may be considered with sec. 70.01 in construing the intent of the legislature. The former section provides where personal property shall be assessed, and raises the last question.

The stipulation in the court below posed the question, whether the personal property could be taxed in the town

of Cady. The problem of where personal property is to be assessed and taxed within the state is a state question of municipal regulation presenting no federal question or problem of the state's jurisdiction to tax. It is within the legislature's discretion to designate the proper assessment district to tax property which has a situs within the state. See *Columbus Southern R. v. Wright* (1894), 151 U. S. 470, 14 Sup. Ct. 396, 38 L. Ed. 238, and *General American Tank Car Corp. v. Day* (1926), 270 U. S. 367, 46 Sup. Ct. 234, 70 L. Ed. 635. In commenting on sec. 70.13, Stats., the court said in *Wisconsin Transportation Co. v. Williams Bay* (1932), 207 Wis. 265, 268, 240 N. W. 136:

"It must be presumed that the enactment of sec. 70.13 resulted in a comprehensive scheme for the taxation of all personal property within this state except such as is specifically declared to be exempt from taxation or is otherwise provided for. It seems clear that the legislature had in contemplation three different classes of personal property and provided generally where each class should be assessed for taxation purposes. One class of property is to be assessed where the same is located, another class where the same is customarily kept, and still another class of property, which has no fixed location, is to be assessed in the district where the owner or the person in charge or possession thereof resides, except as provided in sub. (5) of sec. 70.13."

The trial court was of the opinion that because this construction equipment had no fixed location in the town of Cady and the defendant was a nonresident of Wisconsin, the legislature did not intend to tax such property. We do not agree with this reasoning. The jurisdiction of Wisconsin to tax is not governed by sec. 70.13, Stats. That section determines the proper assessment district for taxable property. The cases of *Middleton v. Lathers* (1933), 213 Wis. 117, 250 N. W. 755, and *O'Keefe v. De Pere* (1960), 9 Wis. (2d) 496, 101 N. W. (2d) 649, relied on by the defendant, are distinguishable on the facts. The *Middleton Case,* also

relied upon by the trial court, dealt only with the proper assessment district of construction property wholly within the state of Wisconsin. On the facts of that case this court affirmed the trial court's conclusion the road machinery was not customarily kept in Middleton and had no fixed location within the state. The decision does not control the facts of the instant case. The question of the jurisdiction of the state to tax was not raised. The *Williams Bay Case* and the *O'Keefe Case,* likewise did not deal with the jurisdiction to tax, but with the proper assessment district. It will be noted in the *O'Keefe Case* that one of the members of the partnership owning the property in the state was a nonresident, but the point here involved was not raised.

Furthermore, the stipulation in the instant case does not raise the question of the proper assessment district as such. It was assumed and implied in the stipulation and so argued on appeal that if the state of Wisconsin had the jurisdiction to tax and the laws of Wisconsin did tax the defendant's property which was in the town of Cady, then the town of Cady was the proper assessment district. No question was raised that another assessment district in Wisconsin could tax this property. We hold on the facts of this case that the town of Cady could assess the tax on the personal property of the defendant.

*By the Court.*—Judgment reversed, with directions to enter a judgment for the plaintiff.

The following opinion was filed March 7, 1961:

HALLOWS, J. (*on motion for rehearing*). The respondent urges the stipulation did not imply the town of Cady was a proper assessment district and the court failed to decide that issue. The respondent contends the town cannot tax because

the property is of such a type as to have no fixed location, therefore, it must be assessed by the town of the residence of the owner, which cannot be done because the owner is a foreign corporation. Neither *Middleton v. Lathers* (1933), 213 Wis. 117, 250 N. W. 755, nor *Wisconsin Transportation Co. v. Williams Bay* (1932), 207 Wis. 265, 240 N. W. 136, is in point. Both decided the question whether the personal property was customarily kept in the town. Neither decided the meaning of the word "located" as used in sec. 70.13, Stats., which determines the proper assessment district.

The type or nature of personal property does not necessarily determine the assessment district. Its use and presence under the facts in each case determine where it should be assessed. We have already decided the respondent's property had a taxable situs in the town of Cady and a sufficient "nexus" to allow the state to tax it. We now hold the personal property was present in the town of Cady for a sufficient period of time to be "located" there within the meaning of sec. 70.13, Stats.

*By the Court.*—Motion for rehearing denied with $25 costs.