R. W. McKINNEY, Appellant,

v.

NACOGDOCHES INDEPENDENT SCHOOL DISTRICT, Appellee.

No. 620.

Court of Civil Appeals of Texas, Tyler.

Nov. 16, 1972.

Rehearing Denied Jan. 4, 1973.

162

Pye & Dobbs, Tyler, for appellant; Barrow, Bland & Rehmet, Houston, of counsel.

Benchoff & Guidry, Edmund F. Benchoff, William D. Guidry, Nacogdoches, for appellee.

MOORE, Justice.

This case involves a determination of the taxable situs of tangible personal property.

Appellee, Nacogdoches Independent School District, brought suit against appellant, R. W. McKinney, in the District Court of Nacogdoches County on January 26, 1965, in Cause No. 1561, seeking to recover delinquent ad valorem taxes on certain personal property due for the year 1960. In 1969, while Cause No. 1561 was still pending, the tax assessor of the school district assessed personal property taxes against the appellant for the year 1969 and also back assessed personal property taxes against him for the years 1962 through 1968. On September 22, 1969, appellant filed suit against the school district in the same district court in Cause No. 14,602 for a declaratory judgment seeking to have the assessments made against him for personal property taxes for the years 1962 through 1969 set aside as null and void. By its fourth amended petition dated October 6, 1971, the school district sought recovery for delinquent ad valorem taxes on the personal property assessed for 1960 and for the years 1962 through 1969, together with penalty, interest and cost accruing as of October 1, 1971. After the two causes were consolidated, trial was had before the court sitting without a jury. At the conclusion thereof, judgment was granted in favor of Nacogdoches Independent School District for the sum of $68,586.27, representing the total of the taxes alleged to be due for the years 1960, 1965, 1966, 1967, 1968 and 1969, together with penalty, interest and cost as of October 1, 1971. The trial court sustained appellant's plea of limitations as to the taxes assessed for the years 1962, 1963 and 1964 and denied appellee a recovery thereon. From this judgment, both parties have prosecuted this appeal.

The record reveals that at all times material to this suit appellant, R. W. McKinney, maintained his residence and office in Nacogdoches, Texas, within the Nacog-doches Independent School District. Among other business enterprises, appellant was engaged in the business of constructing roads and highways at various places in the State of Texas. The highway construction business was conducted through three separate entities: R. W. McKinney, General Contractor; R. W. McKinney and T. L. James & Company, Inc.; and McKinney-Deaton. The personal property assessed by the district and made the basis of this suit consisted of movable property, such as trucks, tractors, road graders, scrapers, rollers, doziers, rock crushers and other movable machinery and equipment used in the construction of highways by the aforesaid entities, none of which was ever situated within the Nacogdoches Independent School District. In 1960 the school district, not being satisfied with appellant's rendition, raised his valuation to $125,00.00 by assessing the roadbuilding equipment used by all three of the above mentioned enterprises. In 1961, the district accepted his $12,500.00 rendition and that year is not in dispute. After 1961 no additional assessments of appellant's property were made until 1969. In 1969 the tax assessor for the district addressed a letter to appellant stating:

"It is the opinion of the tax assessor that movable personal property is taxable at the residence of the owner. Therefore, all movable construction equipment owned by R. W. McKinney not having obtained a tax situs in another jurisdiction has been assessed at a value of $560,840.00 and placed upon the unrendered rolls for the year 1969.

"Additionally, back assessments have been made on unrendered movable personal property owned by R. W. McKinney for the years 1961 to 1968 inclusive. The assessed value as placed upon the 1969 supplemental roll follows: 1961–$512,860.00, 1962–$400,320.00, 1963–$401,330.00, 1964–$573,600.00, 1965–$760,160.00, 1966–$767,940.00, 1967–$866,410.00, 1968–$566,500.00."

The assessed value was arrived at by taking the total depreciated value of all movable property of appellant used in the business of R. W. McKinney, General Contractor, plus one-half of the depreciated value of the movable property owned by R. W. McKinney and T. L. James & Company, Inc., and McKinney-Deaton.

The school district admitted in its pleadings that the property in question was at all times physically located outside the boundaries of the district, but alleged that it was nevertheless taxable by the school district because same never acquired a tax situs separate and apart from the domicile of the owners by way of a permanent location in another jurisdiction. The school district further alleged "(t)hat the taxes for which this action is brought insofar as it involves any properties of the defendant held in *partnership* with others, are upon the defendant's one-half interest in such partnership properties * * *." (Emphasis supplied).

In response appellant alleged that all property assessed by the district had acquired a permanent tax situs in other taxing jurisdictions and as a result the school district was not authorized to tax the property. Alternatively, appellant alleged that even though the property owned by R. W. McKinney, General Contractor, had no permanent tax situs elsewhere and was taxable at his domicile in Nacogdoches, the remainder of the property assessed was not owned by him, but was owned by the partnership of R. W. McKinney and T. L. James & Company, Inc. and by the partnership of R. W. McKinney and Herman Deaton, and was therefore taxable at the principal places of business of the partnerships located in Waco and Sanger, Texas, respectively.

By points one through thirteen appellant urges that the evidence, as a matter of law, establishes that the property in question was permanently situated outside the Nacogdoches Independent School District. Therefore he argues that the taxable situs being elsewhere, the assessment and levy of the taxes by the district is illegal and void. In reply appellee, while admitting that the property was never physically situated in the district, argues that in view of the evidence showing that the property was continuously moved from place to place, it never acquired a permanent situs anywhere and as a result of the rule of *mobilia sequuntur personam* (movables follow the owner) is applicable. Appellee therefore argues that under the *mobilia* rule the tax situs is in Nacogdoches where R. W. McKinney, the alleged owner, resides.

In this connection the trial court made the following findings of fact:

"During the vast majority of the time, the property is on construction sites located over large areas of the State of Texas and in counties away from the storage yards and repair shops maintained by the Defendant and his associates. The continuing location of this property is dependent upon the location of the actual construction sites more than any other factor, and not upon the location of the repair shops and storage yards. The construction sites are continuously changing from place to place and county to county. The great majority of the highway construction jobs are in counties and places other than those where the shops and yards are located. The property is not assigned for actual use to the respective field offices, repair shops or storage yards. The property and the individual items of it are at such locations only at irregular intervals and then only for temporary storage or repair. Relatively small amounts of the property are stored or are being repaired at any one time.

"Individually, the items of property are on jobs outside the counties where the shops and yards are located for the great majority of the time of their existence. Whenever an item of the property is in the yard or the repair shop, it is kept

there only a relatively short period of time. When physically located in the shop or on the yard, it is not contemplated that the property will continue to be located there. To the contrary, the property is there transiently and temporarily rather than with any degree of permanency.

\* \* \* \* \* \*

"The presence of the property, and the individual items of it, at the storage yards or the repair shops is customarily so temporary that it cannot be identified as a part of the mass of the property of the places where the shops and yards are located."

A brief review of the evidence as to each enterprise will be necessary.

## R. W. McKINNEY, GENERAL CONTRACTOR

This enterprise is a sole proprietorship owned by appellant, R. W. McKinney. Its principal business is the building of roads and highways within a radius of seventy-five miles of Leonard, Fannin County, Texas, where its office and storage yard has been maintained on land owned by appellant since 1947. The work is performed in various counties in northeast Texas. The firm owns approximately 150 pieces of movable roadbuilding equipment. When new equipment is bought it is usually sent to the shop in Leonard for servicing before being sent out into the territory. The record shows that highway construction is performed in phases. Each phase requires different equipment. When a phase is completed, the equipment is moved to another job wherever needed. Every effort is made to keep the equipment working. The only time the equipment is returned to the shop at Leonard is when it is in need of repairs or where there is no work available. It is without dispute that work was always available during the years in dispute and that the equipment was never stored in the yard for that reason. On the average each piece of the equipment was returned for repairs once every three months. When repairs were completed, the equipment was sent back out in the field. Larry Clotfelter manages the business. He keeps in touch with his superintendents in the area by means of a central radio system operated in Leonard. Approximately 70% of the work is performed outside of Fannin County where the offices are situated. The equipment is moved from county to county wherever needed without being brought back to the yard at the end of each job. In other words, none of the equipment was ever returned to the yard with any degree of regularity except for repairs. While Mr. Clotfelter estimated that approximately 20% of the equipment was situated on the yard in Leonard on January 1st of each of the years in dispute on account of bad weather, it was not kept there for any appreciable length of time. It was usually kept at work in other counties. The evidence shows that Fannin County, as well as the Leonard Independent School District, assessed at least some taxes against the property which were paid by appellant.

## R. W. McKINNEY AND T. L. JAMES & COMPANY, INC.

This enterprise is engaged in the business of building highways over a broad area in Central and Southeast Texas covering approximately thirty-one counties. Its normal area of operation is from Beaumont to Midland to Texarkana, Texas, a distance of several hundred miles. The principal operating headquarters is situated in Waco, McLennan County, Texas, on a ten-acre tract of land owned by it. Situated on the land is a large office building, extensive repair shops, a large warehouse and covered storage space for machinery and equipment. Robert Parnell, who lives in Waco is the general manager in charge of all operations. Approximately fifteen permanent employees work at the Waco headquarters. Among these is an office manager, an assistant, shop foreman, three truck drivers, five mechanics, two welders and laborers. Radio equipment is maintained at the Waco office so that Mr. Parnell is in contact with the roadbuilding personnel in the various

locations. Approximately 400 pieces of road-building equipment are owned and used by this enterprise. McKinney-James commenced operating at the Waco headquarters in 1959. It has handled literally hundreds of jobs over the years and since it has been in business has never been without work. During the years in dispute the bulk of the equipment has been situated in various counties wherever needed. It is usually transported from job to job without being returned to the Waco yard. On the average each piece of equipment is brought back to Waco for repairs once each year. The extent of the repairs performed at the Waco shop, including spare parts, averaged approximately $800,000.00 annually. At no time during the years in dispute did the firm have to store its equipment in Waco for lack of work. When the equipment is brought back to Waco, it is never there for any appreciable length of time. It is never returned with any degree of regularity. In fact some pieces of the equipment are away for two or three years. The evidence shows that the City of Waco assessed some taxes against some of its property which it paid.

## McKINNEY-DEATON

The operating headquarters of this enterprise is situated in Sanger, Denton County, Texas. Its principal business is the construction of highways in Denton, Cook, Montague and sometimes Hopkins Counties. Its general manager is Herman Deaton. The offices and shop are situated in Sanger, Texas, on a small tract of land owned by McKinney-Deaton. Approximately three employees are permanently employed in Sanger, including a job superintendent, a mechanic and mechanic's helper. The headquarters consist of an office, shop building and storage yard. Approximately fifty pieces of roadbuilding equipment consisting of motor graders, tractors, crushers, rollers, trucks, loaders and shovels are owned by McKinney-Deaton. Each piece is usually brought back

for repairs on an average of every three months. When not in use, the equipment is brought back and stored. However, during the vast majority of the time it is in continuous use and is moved from county to county without being brought back because work is always available. From January 1, 1963, to January 1, 1969, McKinney-Deaton worked on twenty-eight jobs, only three of the jobs being located in Cook County where the office and yard are situated. While the equipment is occasionally returned for repairs, none of the equipment is ever returned with any degree of regularity. Mr. Deaton admitted that "no piece of the equipment is kept permanently anywhere." The cost of repairs and replacement parts installed at the Sanger headquarters averages approximately $140,000.00 annually. Mr. Deaton keeps in touch with his superintendents working in other counties by means of radio. The operations of this enterprise are conducted in practically the same manner as that of McKinney-James.

Article 7145 [1] provides all property, real, personal or mixed, except as may be hereinafter expressly exempted, is subject to taxation and the same shall be listed as herein prescribed. Article 7153 provides:

"All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated; and all personal property, subject to taxation and temporarily removed from the State or county, shall be listed and assessed in the county of the residence of the owner thereof, or in the county where the principal office of such owner is situated."

In City of Houston v. Western Equipment Rentals, Inc., 410 S.W.2d 805 (Tex. Civ.App., 1966), the Waco court said:

"Tangible personal property, under this provision, is taxable at the domicile of the owner unless it has acquired a situs

1. All article references are to Vernon's Ann.Texas Civil Statutes Annotated.

for taxation elsewhere. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 243 S.W. 778, 781. At common law personalty was taxable only at the domicile of the owner, regardless of its actual location, and 'This is still the basic principle upon which the taxation of personal property rests', said Chief Justice Cureton in that case.

"Under the constitutional provision, the words 'where situated' do not by their own force determine the situs of personalty to be where it is physically located. City of Dallas v. Texas Prudential Insurance Co., 156 Tex. 36, 291 S.W.2d 693, 695. But the actual situs for taxation of 'certain classes' of tangible personal property has been determined to be 'where they are permanently kept.' Great Southern Life Ins. Co. v. City of Austin, id., [243 S.W.] 781, syl. 12. See State v. Crown Central Petroleum Co., Tex.Civ.App., 242 S.W.2d 457, writ ref.; City of Dallas v. Overton, Tex.Civ.App., 363 S.W.2d 821, 825, writ ref. n. r. e.; 84 C.J.S. Taxation § 115, pp. 224, 225; 110 A.L.R. pp. 707, 717; Cooley, Taxation, (4th ed.) Sec. 452; 6 Baylor L.Rev. (1954) 324, 327."

 To acquire a tax situs of its own in a particular taxing jurisdiction it is not necessary that tangible personal property be situated in the taxing jurisdiction with absolute permanency, or that it be there situated with no intention on the part of the owner to remove it; to fix tax situs it is enough that its situation have a degree of permanency which will distinguish it from property which is in the taxing jurisdiction on a purely temporary or transitory basis. Guaranty Life Ins. Co. v. City of Austin, 108 Tex. 209, 190 S.W. 189 (1916); Hardesty Bros. v. Fleming, 57 Tex. 395 (1882); Town of Cady v. Alexander Const. Co., 12 Wis.2d 236, 107 N.W.2d 267, 108 N.W.2d 145 (1961); Cooley, The Law of Taxation, sec. 452 (4th ed. 1924); 51 Am.Jur., Taxation, sec. 454; Greyhound Lines, Inc. v. Board of Equalization, 419 S.W.2d 345 (Tex.Sup.1967). Other cases hold that in order for personal property to acquire a tax situs in a taxing district other than the domicile of the owner, the property must be more or less permanently located in the district, or it must be kept in the district with sufficient permanency that it may fairly be regarded as being a part of the general mass of property within the district. State v. Crown Central Petroleum Co., supra; City of Dallas v. Overton, supra, citing cases; Cooley, The Law of Taxation, sec. 452 (4th ed. 1924).

 The modern test of situs seems to be whether the taxing authority has sufficient contact with the personal property sought to be taxed to justify in fairness the particular personal property tax. Town of Cady v. Alexander Const. Co., supra. In the instant case the equipment owned by each enterprise seems to have been continuously on the move. It was constantly moved from county to county depending upon where it was needed. While it may have been occasionally stored at operating headquarters for repairs or because work was not instantly available, it was never returned there with any degree of regularity or kept there for any appreciable length of time. The fact that it was occasionally returned for repairs or that a small part of it was stored on the respective yards on January 1st of each year, does not, in our opinion, establish that the bulk of the property in question became a part of the general mass of property within the jurisdiction of the taxing authorities within the respective counties where the offices and storage yards were situated, nor do we believe the evidence discloses that any of the equipment owned by either of the three enterprises ever acquired a more or less permanent situs at the storage yard or offices maintained by the three respective enterprises. Therefore as we view the record we believe that there is at least some evidence of probative force to support the trial court's finding that none of the property owned by either of the three business enterprises ever became a part of the general mass of property subject to the taxing authorities at their respective operating

headquarters at Leonard, Waco or Sanger. It therefore follows that the *mobilia* rule is applicable and that the property owned by each enterprise is taxable at the domicile of the owner thereof. In view of the fact that it is undisputed that appellant owns all property of the enterprise known as R. W. McKinney, General Contractor, we agree with the trial court's conclusion that the movable personal property owned by him in this enterprise is taxable at his residence within the Nacogdoches Independent School District. We therefore overrule all points brought forward by appellant challenging that part of the judgment awarding appellee a recovery for taxes due and owing on personal property owned by appellant physically situated in the school district as well as taxes due and owing upon personal property owned and used by appellant in the enterprise known as R. W. McKinney, General Contractor. But for the reasons hereinafter stated, we do not agree with the trial court's conclusion that the personal property owned by McKinney-James and McKinney-Deaton is taxable by the district in Nacogdoches under the *mobilia* rule.

By points fourteen through twenty-nine, appellant asserts that the trial court erred in impliedly finding that neither McKinney-James nor McKinney-Deaton constituted partnerships because, he says, such implied finding is contrary to the undisputed evidence and alternatively that such finding is against the great weight and preponderance of the evidence. Appellant contends that each of these entities was shown to be a partnership as a matter of law. Therefore he contends that all the property owned by these two partnerships was owned by the respective partnership entities and that even though he was a partner, he did not own one-half of the property individually and is not liable for taxes on property he did not own. Consequently he says under the *mobilia* rule the property is taxable against McKinney-James at its domicile in Waco, McLennan County, Texas, and against McKinney-Deaton at its domicile in Sanger, Denton County, Texas. We sustain the points and accordingly reverse that part of

the judgment allowing a recovery against R. W. McKinney for taxes on the movable personal property owned by these two partnership entities.

The trial court found that R. W. McKinney and T. L. James & Company, Inc., and R. W. McKinney and H. W. Deaton "were the joint owners (in common and not as owners or tenants in partnership)" of the equipment.

Article 6132b, Sec. 6 of the Texas Uniform Partnership Act, defines a partnership as "an association of two or more persons to carry on as co-owners a business for profit."

Appellant alleged in his pleadings that both McKinney-James and McKinney-Deaton were partnerships. The school district filed no pleading, verified under oath or otherwise, denying these allegations. Rule 93(f), Texas Rules of Civil Procedure, requires that an allegation of partnership be denied under oath, otherwise no issue of disputed fact is created and the fact of partnership is deemed admitted.

■ Furthermore we are of the opinion that the undisputed evidence is sufficient to show that both of these entities were partnerships as a matter of law.

■ Where the parties clearly manifest an intention to form a partnership, such intention constitutes an important, if not the only, true test of a partnership. First National Bank of Brownwood v. Chambers, 398 S.W.2d 313 (Tex.Civ.App., Eastland, 1965, n. w. h.) citing 68 C.J.S. Partnership § 20, p. 433.

Appellant testified that although no written agreement was ever executed, he entered into a partnership with T. L. James & Company, Inc. in 1954; that at the time the partnership was formed he and T. L. James & Company pooled their roadbuilding equipment. He denied that they were joint adventurers. He testified that the agreement was to share the profits and losses on a "fifty-fifty" basis; that the

partnership kept a separate set of books; that the partnership maintained a bank account and that a partnership income tax return had been filed every year with the internal revenue service. Mr. Parnell, the general manager of McKinney-James, testified that he represented T. L. James Company, Inc., and the enterprise was operated as a partnership, and that the partnership owned land in Waco, as well as all of the equipment. We fail to find any evidence of probative force to the contrary.

With regard to McKinney-Deaton, both McKinney and Deaton testified that they formed a partnership in 1961. While no written agreement was ever executed, they testified they agreed to share the profits and losses on a "fifty-fifty" basis; that the land in Sanger as well as all equipment was owned by the partnership. Deaton testified that when the partnership was formed it was agreed that he would furnish some of the capital and that Mr. McKinney would furnish the remainder and he, Deaton, would operate the business and do the work. The partnership maintained a bank account in Nacogdoches and Mr. McKinney kept books for the firm. A partnership income tax return was filed each year with the internal revenue service.

As we view the testimony, there can be no doubt that the parties intended a partnership. While appellee argues that the record as a whole is sufficient to cast some doubt as to whether these two enterprises operated as a partnership or merely as a series of joint ventures on each construction job, we think the record demonstrates that each enterprise was operated as a partnership and find no evidence of probative .force to the contrary. Conrad v. Judson, 465 S.W.2d 819 (Tex.Civ.App., Dallas, 1971, writ ref., n. r. e.).

This brings us to the question of whether the personal property of either of the two partnership entities acquired a tax situs within the school district under the *mobilia* rule. We have concluded that they did not.

Under the existing statutory law of this state, we hold that for ad valorem tax purposes, a partnership constitutes a legal entity. Art. 6132b; Hudgens v. Bain Equipment & Tube Sales, Inc., 459 S.W.2d 873 (Tex.Civ.App., Corpus Christi, 1970, n. w. h.); Penrod Drilling Company v. Johnson, 414 F.2d 1217 (5th Cir.1969); Walter G. Hougland & Sons v. McCracken County Board of Sup'rs, 306 Ky. 234, 206 S.W.2d 951 (1947); also see "Source and Comments" under Texas Uniform Partnership Act (Art. 6132b) by Professor Alan R. Bromberg (Vol. 17, V.A.T.S., p. 300).

A partner's "interest in the partnership is his share of the profits and surplus * * *." Art. 6132b, sec. 26. While the statute declares his "interest" to be personal property for all purposes, the implication is that the property right referred to is intangible and remains so as long as the partnership continues to exist. The statute authorizing school districts to levy and collect taxes does not allow assessment of intangible personal property. Art. 7147. As to the tangible personal property of the partnership, the partners' rights in the specific partnership property are wholly subordinated to the rights of the partnership entity as owner of the property.

In Cooley "The Law of Taxation" Vol. 2 (4th Ed.) sec. 473, p. 1060, it is stated:

"Partnership property is taxable as an entity at the domicile of the firm rather than at the residence of the several owners; and the domicile of a partnership, for the purpose of taxation, is at its place of business."

In 51 Am.Jur., Taxation, sec. 486, the rule is stated thusly:

"* * * the interest of a partner in a partnership may be regarded as separate from his person for the purposes of taxation, and as a general rule, in the absence of a controlling statute to the contrary, it seems that such interest is regarded as having its situs at the place where the business of the partnership is carried on."

The trial court found that the principal offices of "the enterprises in which he (appellant) is involved are located in the City of Nacogdoches," and that "the administrative center of the enterprises is at Nacogdoches which is the principal office for each of them." If these findings mean that the principal place of business of each of the partnerships was situated in Nacogdoches, we do not agree.

In this connection the record shows that the office staff maintained by appellant in Nacogdoches also performed the bookkeeping functions for both McKinney-James and McKinney-Deaton. The record also shows that the principal bank account of each partnership was kept in Nacogdoches. Checks were drawn on the account by the Nacogdoches office upon instructions of the managers of the partnerships and mailed to their respective offices in Waco and Sanger for disbursal. Appellant testified that the bookkeeping functions were handled in this manner so that each partnership could avoid employing a separate accounting staff. He testified however that these services were not performed gratuitously, but that they were performed for an agreed fee which he charged to each of the partnerships.

In determining the principal place of business of a partnership, the purpose for which the partnership was formed must be taken into consideration. In this instance the sole purpose of the partnership was to build roads. The prime purpose is not to keep social security records of its employees, income tax records, and other financial records. These functions are simply necessary subsidiary adjuncts to the building of roads. All roadbuilding functions of these partnerships were carried on through their offices in Waco and Sanger. The decision to bid is made at these offices. The bids were prepared at these offices. The materials were purchased and the jobs were supervised from these offices. The labor is done by men assigned to these offices. The equipment is purchased by and is maintained, repaired, stored, as-

signed to jobs, and, eventually sold through these offices. No one in Mr. McKinney's Nacogdoches office, including Mr. McKinney, has anything to do with these road-building operations; in fact, no one located at Nacogdoches has the know-how to complete a highway contract. The day-to-day business of the partnerships was carried on in Waco and in Sanger. These cities were where the principal operating offices and the only place where the road building business of the partnerships was carried on. We think the proof shows that the domicile of McKinney-James was in Waco and the domicile of McKinney-Deaton was in Sanger. The fact that R. W. McKinney, one of the partners, resided in appellee school district, kept the books and maintained the partnership's bank account for an agreed fee would not alter the situation. O'Keefe v. City of De Pere, 9 Wis.2d 496, 101 N.W.2d 649 (1960). Neither would the fact that appellant stated in a letter to the taxing authorities in Waco that the principal office of McKinney-James was in Nacogdoches be determinative of domicile. Neither the residence of the partners nor their abstract intent is material in determining the domicile of the partnership. Walter G. Hougland & Sons v. McCracken County Board of Sup'rs, supra. Since neither partnership maintained its place of business in Nacogdoches, the property assessment by the appellee school district was, therefore, unauthorized.

Finally, by a cross point, appellee urges that the trial court erred in sustaining the appellant's plea of limitations for the years 1962, 1963 and 1964.

The applicable part of the limitation statute, Art. 7298, reads as follows:

"* * * no suit shall be brought for the collection of delinquent personal property taxes of any taxing authority unless instituted within four (4) years from the time the same shall become delinquent."

In its petition the school district alleged that the taxes for 1962, 1963 and 1964 were

duly and legally assessed and were delinquent. Upon the trial the school district offered in evidence the delinquent tax roll showing the taxes were delinquent for those years. The district sought recovery for taxes, penalty, interest and costs from the date of delinquency for each of said years. Suit was not instituted until December 31, 1969, which was more than four years after the taxes for those years became delinquent.

 We think the record shows on its face that the suit for the collection of the delinquent taxes for the years in question was barred by the statute of limitations. Cook v. City of Booker, 167 S.W.2d 232 (Tex.Civ.App., Amarillo, 1942). Appellee's cross point is overruled.

For the reasons stated above the judgment is reformed as follows:

Appellee, Nacogdoches Independent School District, shall have, take and recover from appellant, R. W. McKinney, for taxes, penalty, interest and cost due for the year 1960 and for the years 1965 through 1969 inclusive, upon the personal property owned and rendered by him which was physically situated in the school district and upon the other personal property owned and used by him in the enterprise of R. W. McKinney, General Contractor, in the aggregate sum and amount of $25,664.86, together with interest thereon as provided by the judgment.

That part of the judgment awarding appellee a personal judgment against appellant for taxes due upon personal property owned by the partnership of McKinney-James and McKinney-Deaton is hereby reversed and rendered in favor of appellant, R. W. McKinney.

All court cost will be taxed, half to appellant and half to appellee.

Reformed and affirmed in part and reversed and rendered in part.

## ON MOTION FOR REHEARING

 Appellee, Nacogdoches Independent School District, urges on Motion for Rehearing that we erred in adjudging one-half of the court cost against the School District. We agree with this contention. No judgment for costs may be taxed against the school district. Article 7343 and 7297, V.A.T.S.; Electra Independent School Dist. v. W. T. Waggoner Estate, 140 Tex. 483, 168 S.W.2d 645; City of Waco v. O. O. Owens, 442 S.W.2d 324 (Tex.Sup., 1969). Accordingly, the judgment of this court will be reformed so as to adjudge all cost against appellant, R. W. McKinney.

In all other respects the Motion for Rehearing is overruled.